UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

**AMY J. WALTERS**

        Plaintiff,

vs.                                          Case No. 12-CV 804

**MAYO CLINIC HEALTH SYSTEM-
EAU CLAIRE HOSPITAL, INC.**

        Defendant.

---

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTIONS IN LIMINE**

---

Plaintiff, Amy J. Walters, by her attorneys, Skinner and Associates and Bakke Norman, S.C., by Carol Skinner, submits this brief in support of her motions in limine to bar evidence or argument relating to the areas herein described.

**INTRODUCTION**

Plaintiff filed this lawsuit on November 6, 2012, alleging violations of the Americans with Disabilities Act (ADA) and the Family Medical Leave Act (FMLA). The issues that must be resolved in this lawsuit are whether Defendant discriminated against Ms. Walters on the basis of her disability under the ADA, whether Defendant reasonably accommodated Ms. Walters' disability under the ADA, and whether Defendant interfered with Ms. Walters' rights under the FMLA. As argued below, certain evidence that Defendant may offer should be barred as it is irrelevant, unduly prejudicial, and likely to confuse the issues, pursuant to Federal Rules of Evidence 401 and 403. Other evidence should be barred as irrelevant under the Collateral

1

Source Rule, and unduly prejudicial. Lastly, comments contained in an expert report which do not comply with Fed. R. Civ. P. 702 should not be allowed in testimony from that expert.

## ARGUMENT

**I.  EVIDENCE OR ARGUMENT RELATING TO PLAINTIFF'S MARRIAGE TO BILL PARSONS SHOULD BE EXCLUDED.**

**A.  Ms. Walters' Marriage to and Divorce from Mr. Parsons is Not Relevant to this Case.**

Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Walters' marriage to her former co-worker, Bill Parsons did not occur until after her employment was terminated by Mayo. This marriage does not tend to make the existence of any fact that is of consequence to the determination of Defendant's liability under the ADA or FMLA more or less probable. For instance, Plaintiff's marriage or marital history with Mr. Parsons does not affect whether Defendant discriminated against her on the basis of her disability or whether Defendant reasonably accommodated her disability under the ADA. Nor does it have any bearing on whether Defendant interfered with Ms. Walters' rights under the FMLA. Further, information relating to Plaintiff's marriage to Mr. Parsons has little bearing on the amount of damages due under the ADA or FMLA. [1]Therefore, evidence relating to the marriage, marital relationship, and divorce between Ms. Walters and Mr. Parsons is irrelevant and must be barred pursuant to Fed. R. Evid. 401.

---

[1] In fact, because of Walters' marriage to Parsons, she did not incur the costly out of pocket medication expenses she incurred thereafter, which reduces Defendant's potential liability.

2

B.  **Any Probative Value Regarding Ms. Walters' Marriage to Parsons Is Substantially Outweighed by the Prejudicial Effect of Such Evidence.**

If evidence of Walters' marriage to Parsons is allowed, more testimony would be required providing the reasons for this marriage, which was not a traditional marriage. Walters would testify that she had overwhelming fears of being without health insurance, given her need for medications. She would testify that she witnessed [REDACTED]

When Parsons offered to marry Walters so that she would not lose her insurance, she agreed, only after explaining to him that she was marrying him to remain covered under the Mayo health insurance policy, and not because she was ready for a relationship with him or anyone, given her current emotional state. As well, Walters' treatment provider(s) may need to testify about Walters fears/phobias regarding being without insurance and medications. None of this evidence has any bearing on the claim or issues of this case and its inclusion will deter from the real issues and expend time and resources unnecessarily.

Fed. R. Evid. 403 allows the court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Evidence relating to Walters' marriage to and divorce from Mr. Parsons creates a danger of unfair prejudice and confusion of the issues. In *E.E.O.C. v. Wal-Mart Stores, Inc.*, 2000 U.S. Dist. LEXIS 13342, the district court granted the EEOC's motion to bar mention of evidence of the employee's marriages and divorces, where the EEOC believed that the defendant might use the evidence to "show other bases for the employee's emotional distress and/or to portray her as an emotionally over-sensitive person." *Id.,* at *8.

Similarly, here, evidence of Walters' marriage to Parsons may prejudice the jury against Walters or lead the jury to believe that she is a bad person for marrying a person for insurance coverage.  Evidence would have to be introduced to counter that prejudice.  For the foregoing reasons, the prejudicial effect of this evidence would substantially outweigh any probative value it could have, which appears to be none, given the fact that it occurred after the relationship ended.  Therefore, any evidence or argument relating to Plaintiff's marriage to Parsons, their marital relationship, or their divorce must be barred pursuant to Fed. R. Evid. 403.

**II.     EVIDENCE OR ARGUMENT RELATING TO PLAINTIFF'S PERSONAL RELATIONSHIP WITH DR. EDUARDO PEREZ SHOULD BE BARRED.**

   **A.     Ms. Walters' Personal Relationship with Dr. Perez is Not Relevant to the Instant Case.**

Ms. Walters' personal relationship with Dr. Eduardo Perez does not tend to make the existence of any fact that is of consequence to the determination of Defendant's liability under the ADA or FMLA more or less probable. Nor does Ms. Walters' personal relationship with Dr. Perez have any bearing on the amount of damages due to her under the ADA or FMLA. Therefore, evidence relating to Ms. Walters' personal relationship with Dr. Perez is irrelevant and must be barred pursuant to Fed. R. Evid. 401.

   **B.     Any Probative Value Regarding Ms. Walters' Personal Relationship with Dr. Perez Is Substantially Outweighed by the Prejudicial Effect of Such Evidence.**

During her employment as lead nurse in the operating room in 2008-2010, Walters worked closely with the neurosurgeon on her team, Dr. Eduardo Perez.  The two became friends outside of work during the Summer of 2010, and after Walters moved off Perez' team and into her supervisor role, ███████████████████████████████████████  Because Perez was married, though separated from his wife, Walters told Perez she did not want to pursue a

relationship. They did not begin dating until the Summer of 2011, after Perez' marriage ended and Walters' employment had been terminated.

Any probative value of evidence relating to Plaintiff's personal or sexual relationship with Dr. Perez is substantially outweighed by the danger of unfair prejudice and confusion of the issues, pursuant to Fed. R. Evid. 403. First, because Ms. Walters and Dr. Perez were co-workers, the jury may draw the conclusion that Plaintiff's friendship with Dr. Perez was somehow inappropriate or related to the disciplinary actions taken against Plaintiff. There is evidence that Mayo management felt that Perez spent too much time with both Walters and Pendergast, the other perioperative nurse supervisor. The introduction of this evidence would necessitate further evidence regarding whether Perez, or only the nurses were confronted by Mayo about this apparent concern.

Further, Defendant is expected to suggest that ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████ and/or somehow less credible. Courts in other jurisdictions have barred evidence that a witness ███████████████████ on grounds that such evidence is unduly prejudicial. *See, e.g., United States v. Ndiaye*, 434 F.3d 1270, 1289-90 (11th Cir. 2006) (holding that the criminal defendant's attempt to engage in a ████████ ████████████████ did not directly relate to his truthfulness or honesty, and that there was thus a significant danger of unfair prejudice in allowing evidence thereof); *see also United States v. Siraj*, 2006 U.S. Dist. LEXIS 68651 (E.D.N.Y. 2006) (barring evidence of a government witness's ███████████████████████████ "even if the topics had any probative value…the prejudicial impact of such topics on the jury would clearly outweigh it.").



5

Even if Walters' relationship with Dr. Perez had any relevance to the issues in this matter, which does not appear to be the case, such relevance is substantially outweighed by the likelihood that the jury would be unfairly prejudiced against Ms. Walters. Therefore, the court should bar evidence or argument relating to Ms. Walters' personal relationship with Dr. Perez pursuant to Fed. R. Evid. 403.

**III.   EVIDENCE OR ARGUMENT RELATING TO PLAINTIFF'S RECEIPT OF SOCIAL SECURITY INCOME SHOULD BE BARRED PURSUANT TO THE COLLATERAL SOURCE RULE AND RULES OF EVIDENCE.**

Under the collateral source rule, a defendant's liability is not reduced merely because the plaintiff's net damages are reduced by payment from a collateral source. *See Khorrami v. Mueller*, 2014 U.S. Dist. LEXIS 870 at *21-22, 2014 WL 47059 (E.D. Wis. 2014), *citing Gill v. Maciejewski*, 546 F.3d 557, 564 (8th Cir. 2008). The collateral source rule gives the district court discretion to determine that collateral source payments should not be deducted from an award of damages. *See EEOC v. O'Grady*, 857 F.2d 383, 390 (7th Cir. 1988); *Perry v. Larson*, 794 F.2d 279, 286 n. 3 (7th Cir. 1986). In deciding whether to deduct collateral source benefits from a damages award, the court must choose between conferring an arguable "windfall" onto the plaintiff, or the party found liable for discrimination or tortious conduct. *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1429 (7th Cir. 1986); *see also Schuster v. Shephard Chevrolet, Inc.*, 2002 U.S. Dist. LEXIS 5699 at *19, 2002 WL 507130 (N.D. Ill. 2002). The purpose of the collateral source rule is "not to prevent the plaintiff from being overcompensated but rather to prevent the tortfeasor from paying twice." *See O'Grady, supra,* 857 F.2d at 389, *citing Perry v. Larson*, 794 F.2d at 286.

### A. The Court Should Use Its Discretion to Bar Evidence Of Plaintiff's Receipt of Social Security Income.

Previous Seventh Circuit courts have barred evidence of a plaintiff's Social Security income on the grounds that such income is collateral. *See Tomao v. Abbott Labs, Inc.*, 2007 U.S. Dist. 3274 at *9, 2007 WL 141909 (N.D. Ill. 2007); *Schuster, supra*, 2002 U.S. Dist. LEXIS 5699 at *17-21. In *Schuster*, the court rejected the defendant's argument that social security benefits were not "collateral" since social security funds were supported in part by the defendant's tax contributions as the employer. *Id.*, at *17-21. The court held that "funds supported in part-but not entirely-by contributions from the defendant are generally considered collateral." *Id.* at *17-18, citing O'Grady*, *supra*, 857 F.2d at 390. The court further reasoned that, just as the defendant had contributed to the plaintiff's social security in the form of taxes, the same could be said of the plaintiff employee, and allowing the defendant to deduct social security benefits from its damages would confer onto the defendant a "discrimination bonus." *Schuster, supra,* at *18-19. The court determined that it would rather confer any arguable "windfall" onto the plaintiff, not the party held liable for discrimination. *Id.* at *19.

Similarly, Plaintiff's social security benefits received after her employment termination are a collateral source of income, even if Defendant argues that it contributed to that compensation through its tax contributions. As such, Plaintiff's social security income should not be used to offset the damages owed to her. Evidence of Plaintiff's receipt of social security benefits is thus irrelevant to any calculation of damages under Fed. R. Evid. 401, and also has no bearing on whether or not Defendant is liable under the FMLA or ADA. Therefore, Plaintiff's motion to bar evidence of social security benefits should be granted pursuant to the Fed. R. Evid. 401 and the collateral source rule.

### B. Evidence of Plaintiff's Receipt of Social Security Disability Would Be Unfairly Prejudicial and Should Not Be Allowed Pursuant to Fed. R. Evid. 403.

Defendant is expected to offer testimony that Plaintiff's job seeking efforts have been adversely affected by her receipt of Social Security Benefits. Based on questions asked Plaintiff's vocational expert in deposition, it appears that Defendant intends to argue that Plaintiff is receiving so much Social Security income that she's not seriously seeking employment. Besides being untrue, any possible productive value of this line of questions is outweighed by the danger of unfair prejudice.

Given the fact that the collateral source rule applies to Social Security benefits, evidence regarding Plaintiffs receipt of these funds could only be offered to disparage Walters to the jury, or bring to the jury's attention that its tax dollars are being used to support Walters. Allowing this kind of evidence would be no different than allowing Plaintiff to offer evidence of Defendant's tax exempt status, inviting the jury to speculate about whether it supports *Defendant* with tax dollars. Any productive value of this evidence is substantially outweighed by the danger of unfair prejudice and misleading the jury, and should not be allowed, pursuant to Fed R. Evid. 403.

### IV. EVIDENCE OR ARGUMENT REGARDING UNFOUNDED ALLEGATIONS OF ILLEGAL DRUG USE BY PLAINTIFF SHOULD BE BARRED.

### A. Allegations of Ms. Walters' Prior Illicit Drug Use Are Irrelevant Under Fed R. Evid. 401.

Defendant has suggested that it intends to offer evidence that Walters engaged in the use of illegal nonprescription drugs. Walters vehemently denies the use of any such drugs. She believes that the witness who is alleged to have made this claim, Bill Parsons, is only saying this

out of vengeance because Walters was not interested in developing a marital relationship with him.

Allegations that Ms. Walters has previously used illicit drugs, even if true, do not tend to make the existence of any fact that is of consequence to the determination of Defendant's liability under the ADA or FMLA more or less probable. Defendant may suggest that Ms. Walters' prior alleged drug use is relevant insofar as it makes her version of events less likely. However, in *Mason v. City of Chicago*, 631 F. Supp. 2d 1052 1060-61 (N.D. Ill. 2009) a police brutality case, a Seventh Circuit district court held that the plaintiff's use of marijuana three hours before the event underlying the lawsuit was irrelevant. ("This case turns on the credibility of the parties involved. The question of whether Plaintiff smoked a marijuana cigarette three hours before the incident is no more probative than whether the officers drank coffee before the incident.").

In the instant case, allegations that Ms. Walters engaged in drug use are even less probative of Ms. Walters' overall credibility, since Defendant lacks any evidence that Ms. Walters was under the influence of illegal drugs during any of the work-related events underlying this lawsuit. *See EEOC v. GLC Rests., Inc.*, 2007 U.S. Dist. LEXIS 399, 2007 WL 30269, at *4 (D. Ariz. Jan. 4, 2007) ("Nor do Defendants cite any specific evidence to suggest that the claimants used drugs or alcohol while working at Defendants' establishment. In the absence of such specific evidence, the relevancy of general drug or alcohol use is marginal.").

Moreover, the alleged drug use has no bearing on the amount of damages due to Ms. Walters under the ADA or FMLA. Although Defendant may suggest that Plaintiff's emotional damages were exacerbated by her alleged use of illicit drugs, courts in other jurisdictions have rejected similar arguments in the absence of specific evidence that drug use actually caused the

9

plaintiff emotional distress. *See Cattaneo v. Aquakleen Prods.,* 2012 U.S. Dist. LEXIS 124063, 2012 WL 3778302, at *25 (D. Colo. Aug. 31, 2012) (Granting plaintiffs' motion in limine where "Defendant has offered no evidence that the drug use caused either [plaintiff] any significant emotional distress. Essentially it asks the jury to speculate.").

Because any allegation that Ms. Walters has used illicit drugs is completely unfounded, Defendant will not be able to present any evidence that drug use exacerbated Ms. Walters' emotional condition. Therefore, any testimony or argument pertaining to Ms. Walters' alleged prior drug use must be barred pursuant to Fed. R. Evid. 401.

### B. Any Probative Value of Plaintiff's Alleged Use of Illicit Drugs is Substantially Outweighed by the Prejudicial Effect of Such Evidence.

Even if there was any credible evidence that Walters used illicit drugs and such evidence had any relevance to the issues in this case, its relevance is substantially outweighed by the danger that such evidence would unfairly prejudice the jury against Walters. In *Mason v. Supera*, *supra,* the court barred evidence that the plaintiff used marijuana on the grounds that such evidence was "highly inappropriate" and constituted a general character attack. 631 F. Supp. 2d at 1060-61. The 7th Circuit has previously stated that there is "considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony." *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987).

Here, there is a considerable danger that allegations of Walters' drug use could lead the jury to the inappropriate and incorrect conclusion that Walters was a poor employee or that she is somehow less credible. Further, because these allegations are unfounded and unsupported by specific evidence, they constitute an unfair, general character attack against Walters. Accordingly, the court should exclude all suggestions that Ms. Walters used illicit drugs on the grounds that such evidence is unduly prejudicial under Fed. R. Evid. 403.

V.  **TESTIMONY FROM DR. NINA BARTELL RELATING TO HER "COMMENTS" ABOUT CERTAIN ASPECTS OF THE CASE SHOULD BE BARRED.**

Dr. Nina Bartell has been disclosed by Defendants as an expert in the field of psychology, and has authored an expert report in this case. Dr. Bartell's written report includes a section containing "comments" about certain aspects of the case. The comments are listed as (a)-(f) at pages 13-14 of the report.

Pursuant to Fed. R. Evid. 702, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if four conditions are met. The conditions are as follows:  (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or date; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

With respect to comment (b) in her report, Dr. Bartell opines about "appropriate accommodations" for Amy Walters. Dr. Bartell admitted in her deposition, however, that she is not qualified as an expert on reasonable accommodation. Specifically, Dr. Bartell does not have any training, experience or education regarding reasonable accommodations and the Americans with Disabilities Act. Dr. Bartell's testified that she did not consider herself to have any expertise with respect to reasonable accommodation issues under the ADA or WFEA. As such, she may not render opinions about appropriate accommodations in this case.

Similarly, Dr. Bartell's comments (a), (b) and (d) do not meet the  criteria of Fed. Evid. P 702(a)-(d). Dr. Bartell is making observations and comments that are not based on any scientific, technical or specialized knowledge. Nor are her observations and comments the

11

product of reliable principals or methods. Dr. Bartell is merely making personal observations, rather than professional observations, about what she concludes based on her review of limited facts of the case.

For example, in comment (a), Dr. Bartell writes: "It is evident that she [Walters] took great pains to keep her condition a secret and to prevent or limit the information that might have provided some clarity to her conduct and very complicated medical condition." This statement is merely Dr. Bartell's interpretation of the evidence, rather than the proper subject matter of an expert opinion.

In comment (d), Dr. Bartell notes that "Ms. Walters appears to have a history of doing what she needs to do to survive, or at least significantly benefit her circumstances." In this same comment, Dr. Bartell then references Amy Walter's marriage to a co-worker for health insurance purposes, compares the use of FMLA to Amy Walter's post termination marriage, and then concludes that the use of FMLA to obtain and extend her leave seemed relatively easy and less personally risky than her marriage.

This comment (d) should be excluded based on Fed R. Evid. 401 and 403. The issue of Amy Walter's use or non-use of FMLA during her employment is not even remotely related to what Plaintiff did after she lost her job to avoid being without needed health insurance. The comment appears to be an improper attempt to bootstrap the marriage issue relating to Bill Parsons into the case to make Walters look bad. Even if relevant, this comment should be excluded based on unfair prejudice as argued in Section IB of this Motion. Moreover, this comment should be excluded as it is merely Dr. Bartell's opinion, which is not based on any specialized knowledge or any scientific principles or method.

## VI. TESTIMONY OR ARGUMENT RELATING TO CONDUCT BY PLAINTIFF'S PSYCHIATRIST IS NOT RELEVANT AND SHOULD BE BARRED.

Defendant is expected to offer evidence of professional misconduct by Plaintiff's psychiatrist. There is no evidence that any alleged misconduct occurred during Plaintiff's employment with Defendant, however, and admission of such evidence or argument could not possibly "have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As such, it must be barred pursuant to Fed. R. Evid. 401.

As is the case with other evidence which Plaintiff seeks to limit with this motion, the probative value, if any, of evidence of misconduct by her treating physician, is substantially outweighed by the danger that such evidence would unfairly prejudice the jury against Ms. Walters, and should be barred pursuant to Fed. R. Evid. 403. Given the discovery that has been going on in this matter, it is expected that Defendant will somehow suggest that Plaintiff is to blame for the fact that her psychiatrist was interested in a relationship with her. This, like unfounded allegations of illicit drug use, would constitute an unfair, general character attack against Walters. Evidence or argument about any misconduct by Plaintiff's psychiatrist has no relevance to the issues of whether Defendant violated the ADA or FMLA. Introduction of such evidence presents a significant danger of unfairly prejudicing the jury, and should not be allowed, certainly, in the liability portion of this case.

If Defendant wished to attack the credibility of its own employee by introducing evidence of his alleged misconduct, this should only be allowed in the damage phase of the trial. Further, Defendant should be prohibited from suggesting that any such misconduct is the fault of Amy Walters, absent credible evidence of the same.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that her motions in limine be granted in their entirety.

Dated  February 21 , 2014.

**SKINNER AND ASSOCIATES**
**BAKKE NORMAN, S.C.**


By:  /Carol N. Skinner/
Carol N. Skinner
Attorney ID #1017307
Attorneys for Plaintiff
CSkinner@skinnerlaw.com
212 Commercial Street
Hudson, WI  54016
(715) 386-5800