UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

AMY J. WALTERS,

        Plaintiff,                                      Case No. 12-cv-804

v.

MAYO CLINIC HEALTH SYSTEM –
EAU CLAIRE HOSPITAL, INC.

        Defendant.

---

### DEFENDANT'S MOTIONS IN LIMINE

---

NOW COMES Defendant, Mayo Clinic Health System – Eau Claire Hospital, Inc. ("Mayo-Eau Claire"), by and through its undersigned counsel, and hereby submits the following Motions in Limine for trial.

**Motion in Limine No. 1**: **Motion to Exclude Evidence, Argument or Questions Relating to The Opinions or Expert Report of Dr. Jay Collier.**

Dr. Collier was a psychiatrist that treated Plaintiff from 2009 through 2012. Plaintiff disclosed Dr. Collier as an expert and provided an undated expert report purportedly prepared in part by Dr. Collier under Fed. R. Civ. P. 26(a)(2). Since that disclosure, however, Plaintiff has made allegations against Dr. Collier of inappropriate advances that occurred during counseling sessions. Dr. Collier has retained an attorney to defend him against such allegations. Given this significant development, Dr. Collier has declined to act as an expert witness in this matter and to provide any expert opinions. The parties intend to depose Dr. Collier on the treatment he provided to Plaintiff.

It is expected that Plaintiff will attempt to introduce opinions and the "expert" report of Dr. Collier through the testimony of other expert witnesses. Any such attempt is improper and barred under Fed. R. Evid. 702 and 703. Rule 703 permits expert opinion to be based upon admissible or inadmissible "facts or data" if experts in the field reasonably rely on such "facts or data." Fed. R. Evid. 703. However, "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluation the opinion substantially outweighs their prejudicial effect." *Id.*

Courts from around the country have consistently determined that one expert cannot simply adopt and parrot the opinions of another expert. *See, Tokio Marine & Fire Ins. Co. v. Norfolk & Western Ry. Co.,* 1999 WL 12931 at *4 ("one expert may not give the opinion of another expert who does not testify"); *American Key Corp. v. Cole National Corp.,* 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."); *In re Sulfuric Acid Antitrust Litig.,* 235 F.R.D. 646, 653 (N.D.Ill. 2006) (expert may rely on data provided by another but cannot be the mouthpiece for the opinions of another expert); *Mushing v. Pacific Cycle, Inc.,* 2012 WL 2062396 (D.Virgin Islands 2012) (barring opinions of expert witness that adopted opinions of another expert when no steps were taken to independently verify the prior analysis).

The wholesale adoption of a withdrawn expert report by another expert was squarely rejected in *Bouygues Telecom, S.A. v. Tekelec,* 472 F.Supp.2d 722, 729 (E.D.N.C. 2007). In that case, the plaintiff was forced to withdraw two of his seven expert witnesses after the court limited the parties' number of experts to five. *Id.* Thereafter, the plaintiff disclosed five expert reports that incorporated the reports of the withdrawn witnesses. *Id.* The court granted defendant's motion to exclude the reports that incorporated the withdrawn reports finding that

"the wholesale adoption of the opinion of another expert verbatim cannot be within the intent of Fed.R.Evid 702." *Id.* at 730.

Courts have occasionally permitted one expert to adopt the "facts and data" of another expert but only when the expert independently verified the prior expert's analysis. *See McReynolds v. Sodexho Marriott Services, Inc.*, 349 F.Supp.2d 30, 37 (D.D.C. 2004) (allowing expert testimony which relied in part on the work of others, where expert was able to review the report for errors and independently verify the analysis). However, courts draw the line between the rather "prejudicial circumstances of experts relying upon, or reciting, the opinions of other experts not subject to cross-examination, and modern evidence law's apparent recognition that facts and data supplied by third-parties, including other experts." *Jung v. Neschis*, 2007 WL 5256966, *16 (S.D.N.Y. 2007) (excluding withdrawn expert's affidavits when the affidavits consisted of opinions formed largely on the basis of that expert's own observations).

These cases establish that it would be wholly improper for Plaintiff to introduce the expert opinions and report of Dr. Collier through another witness under Fed.R.Evid. 702 and 703. While certain "facts and data" may be adopted by another expert in limited circumstances, there is no basis for permitting the adoption of another expert's opinions. Further, because Dr. Collier's report would otherwise be inadmissible due to his refusal to testify as an expert (not surprisingly where the very party proffering him as an expert is accusing him of malpractice), Plaintiff, as the proponent of the opinion must show that its probative value is substantially outweighed by its prejudicial effect." *Id.*

Here, Mayo-Eau Claire would be severely prejudiced if Dr. Collier's expert opinions are admitted. Plaintiff cannot compel Dr. Collier to serve as an expert witness and to provide opinions on behalf of Plaintiff. Dr. Collier can testify about facts, which he supposedly will do

at his upcoming deposition. The Dr. Collier expert report includes both facts and opinions. With the withdrawal of Dr. Collier as an expert, the opinions in the prior report are similarly withdrawn. If Dr. Collier's opinions are withdrawn and he cannot be compelled to provide opinions at his deposition, other experts subsequently named by Plaintiff should not be permitted to rely on Dr. Collier's withdrawn opinions since there will be no opportunity to cross-examine Dr. Collier on such withdrawn opinions. In any event, there is no basis for even allowing Plaintiff's other expert to adopt any portions of Dr. Collier's reports as there is no evidence that she has independently verified, or is even qualified to independently verify, the findings of Dr. Collier. Dr. Collier is a medical doctor specializing in psychiatry and Plaintiff's current mental health expert is a masters level counselor specializing in marriage and family counseling.

For these reasons, Plaintiff should be precluded from proffering any evidence, argument or questions regarding Dr. Collier's opinions or expert report.

**Motion in Limine No. 2:  Motion to Exclude Evidence, Argument or Questions Relating to a Hostile Work Environment.**

By order dated October 16, 2013, the Court permitted Plaintiff to pursue a hostile work environment claim based upon disability (Dckt #35). Shortly thereafter, however, Plaintiff concluded that she did not intend to pursue a hostile work environment claim. Accordingly, on February 7, 2014, Plaintiff stipulated to the dismissal of her hostile work environment and harassment claim with prejudice. (Dckt #103). Plaintiff's remaining disparate treatment disability claims are that she was demoted, suspended and discharged due to her disability.

Despite the dismissal of her hostile work environment claim, it is expected Plaintiff may attempt to introduce the following evidence at trial which she claimed supported her harassment claim that has now been dismissed:

1. Defendant held weekly meetings with other supervisors about Plaintiff's conduct or attendance without notifying Plaintiff about these perceived problems.

2. Defendant excluded Plaintiff from monthly management and other meetings.

3. Defendant failed to conduct Plaintiff's 2010 performance evaluation.

4. Defendant scrutinized Plaintiff's attendance.

5. Defendant never indicated a reason for Plaintiff's return to the operating room and allowed negative rumors to circulate.

6. Defendant excessively criticized Plaintiff and set her up for failure.

7. Defendant did not give appropriate training or orientation to Plaintiff for certain tasks.

8. Defendant criticized Plaintiff for asking for assistance.

9. Defendant did nothing about Plaintiff allegedly having an inconsistent working badge for clocking in and out.

10. Defendant asked Plaintiff to report to employee health for an evaluation.

11. Defendant treated Plaintiff as an incompetent employee.

12. Defendant expected Plaintiff to perform duties without required training.

13. Defendant humiliated Plaintiff by allowing rumors to circulate regarding her demotion.

This evidence should be barred because it is not relevant under Fed. R. Evid. 401, to Plaintiff's remaining claims. *See, Hernandez v. HCH Miller Park Joint Venture,* 418 F.3d 732, 736 (7th Cir. 2005) (It was not error for the district court to exclude evidence of sexually harassing bathroom graffiti when the plaintiff had not brought a hostile work environment claim); *Davis v. Harris,* 2006 WL 3321630, *28 (C.D.Ill. 2006) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275 (1996) ("hostile work environment claims are different

from disparate treatment claims....because the issue is not whether the particular acts constitute employment discrimination or retaliation, but whether the overall environment....was illegally...hostile.")

A disparate treatment claim under the ADA requires the employee to show that she was disabled within meaning of ADA and suffered an adverse employment action while similarly situated employees received more favorable treatment. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001). Here, Plaintiff claims that the adverse employment action she suffered was a demotion, suspension and discharge. She does not claim that any of the above listed conduct constituted an adverse employment action. Likewise, the above listed conduct is irrelevant to Plaintiff's failure to accommodate claim, which requires proof of a disability, the employer's knowledge of the disability and a failure to reasonably accommodate it. *Hoffman*, 256 F.3d at 572.

For these reasons, Plaintiff should be precluded from proffering any evidence, argument or questions regarding a hostile work environment, including the above listed evidence and any other similar evidence.

**Motion in Limine No. 3: Motion to Exclude Testimony And Evidence on Plaintiff's Inability to be Reinstated With Mayo-Eau Claire Due to Post-Traumatic Stress Disorder.**

Margo Hecker is a marriage and family therapist recently added to the Plaintiff's witness list as a new treating expert by the Court's decision of January 23, 2014. In an amended expert report, Plaintiff has alleged, for the first time in this litigation, that Plaintiff cannot be reinstated with Mayo-Eau Claire due to Post-Traumatic Stress Disorder ("PTSD"). Such testimony is a dramatic change in the Plaintiff's arguments in this litigation and directly contradicts the requested relief of reinstatement the Plaintiff seeks in the Complaint. Mayo-Eau Claire requests the Court enter an order precluding testimony or evidence on this topic for two reasons.

Testimony or evidence that Plaintiff cannot be reinstated represents an improper and tardy amendment to Plaintiff's pleadings in violation of F.R.C.P. 15(a)(2) and the Court's Preliminary Pretrial Conference Order.  Additionally, this new testimony unfair prejudices Mayo-Eau Claire's ability to defend this litigation, in violation of Fed. R. Evid. 403.

    A. <u>F.R.C.P. 15(a)(2) and Preliminary Pretrial Conference Order.</u>

Under F.R.C.P. 15(a)(2), a party is permitted to amend its pleadings with the consent of opposing counsel or upon obtaining leave from the Court.  The Plaintiff's Complaint makes no allegation that she cannot return to work with Mayo-Eau Claire due to PTSD which allegedly will result if Plaintiff is back in the workplace.  Quite to the contrary, the Complaint seeks a Court judgment that Plaintiff be reinstated.  Her Complaint plainly states:

> **Wherefore**, Plaintiff prays for the following relief:
> A. Judgment against Defendant in amount sufficient to compensate Walters for financial damages suffered as a result of Defendant's conduct, including back pay, <u>and reinstatement</u> or front pay until such time as Walters is able to resume gainful employment at a similar salary, . . . .

(Dckt #1, p. 11)(emphasis added.)

The Plaintiff now seeks to amend her pleadings through the testimony of Hecker to allege that she cannot be reinstated because of PTSD.

The Plaintiff's actions to amend her pleadings, without a motion, through Hecker's testimony, is a violation of F.R.C.P. 15(a)(2).  Plaintiff is seeking to amend her pleadings to change her allegations and her relief sought without leave of the court or the consent of counsel.  She is seeking to fundamentally change her argument in the closing moments prior to trial to one that directly contradicts her long-held position.  *See, Airborne Beepers &Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007)(amendment of pleading may be disallowed where there is "undue delay, bad faith or dilatory motive on part of the movant, . . . .")

7

Plaintiff may claim that she sought alternative relief in the form of front pay. Such allegation, however, was unrelated to Plaintiff's brand new allegation that she will develop PTSD if she is returned to a position at Mayo-Eau Claire, should she prevail on her discriminatory discharge claim. Such a position would obviously require qualified expert testimony that establishes a linkage between first, a PTSD diagnosis, and second, returning to the workplace. Plaintiff's claim of PTSD to date related solely to a claim ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ It was not until Plaintiff's amended disclosure for Ms. Hecker that Plaintiff, for the first time, raised this new PTSD issue. Additionally, this type of opinion is not the type that a treating expert can provide in an abbreviated expert report where there is no requirement to provide the detail mandated by Rule 26(a)(2)(B), including providing all bases and reasons for such an opinion.

B. Fed. R. Evid. 403.

Additionally, Ms. Hecker's testimony that Plaintiff cannot be reinstated should be disallowed under Rule 403 because it is unfairly prejudicial to Mayo-Eau Claire. Rule 403 provides:

> **Rule 403. Excluding relevant evidence for prejudice, confusion, waste of time or other reasons.** The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed.R.Evid. 403.

The proposed expert testimony of Hecker on the Plaintiff's ability to work is a surprise to Mayo-Eau Claire and unfairly prejudices its ability to defend this litigation. To date, Mayo-Eau Claire has rightfully relied upon the demands of Plaintiff's Complaint that Plaintiff believes she

can be reinstated with Mayo-Eau Claire. Moreover, none of the Plaintiff's previously disclosed experts have contended Plaintiff is incapable of reinstatement due to PTSD.

To permit the Plaintiff, through a new treating expert, to completely change the Plaintiff's arguments and relief sought in this action unfairly prejudices Mayo-Eau Claire's ability to defend itself. Mayo-Eau Claire has not had the opportunity to independently evaluate whether Plaintiff's alleged PTSD would prevent her reinstatement, or question her prior treatment providers as to Hecker's opinions on this topic. To prevent unfair prejudice to Mayo-Eau Claire, the Court should enter an order restricting testimony or evidence from Hecker (or others) on this topic.

The Plaintiff may point to the terms of the Court's January 23, 2014 decision as a reason to permit Hecker's testimony. When the Court granted Plaintiff's motion to add Hecker to the witness list, it circumscribed her testimony to the topics of "Plaintiff's mental health and treatment therefor, her ability to work, and damages resulting from the events complained of in this case." (Dckt #102, p. 2). These topics were taken verbatim from Plaintiff's expert witness disclosure of August 30, 2013. At the time Plaintiff submitted this disclosure all of the parties, including the Plaintiff, expected that any testimony concerning the Plaintiff's ability to work would center upon the Plaintiff's ability to perform her prior job and be reinstated. After all, reinstatement was part of the relief sought by the Plaintiff in this case. Plaintiff had never alleged prior to her expert disclosure that she suffered from PTSD that affected her ability to return to the workplace. The Plaintiff should not be permitted to hide behind that topic description at the last minute to change her position on the Plaintiff's ability to work.

Plaintiff's belated argument that she will suffer PTSD if she returns to work at Mayo-Eau Claire is also unfairly prejudiced because Mayo-Eau Claire has had its experts, both its

psychologist and vocational expert, proceed based upon Plaintiff's request for reinstatement. If Plaintiff is permitted to present this new opinion, Mayo-Eau Claire would need to submit a new expert report addressing this new opinion. The case is set for trial in approximately one month and adding a new issue to the case that will require additional expert work and testimony is wholly unreasonable. The reason for this wholly new opinion is obvious – Plaintiff understands that if she prevails on her termination claim and is reinstated, as is generally the case in discriminatory termination cases, she will not have a claim for loss of earning capacity, which she otherwise is attempting to make in this case. The Court should determine the probative value of testimony by Hecker or others on this issue is substantially outweighed by the dangers of unfair prejudice. Moreover, if Plaintiff intended to assert such a position in this litigation, she should have done so much earlier so Mayo-Eau Claire's experts could have addressed this new argument.

The Plaintiff is not entitled to take advantage of a late expert witness addition to completely change her position on the topic of reinstatement. Such action is contrary to the Federal Rules of Civil Procedure and this Court's order governing amendments, is prejudicial to Mayo-Eau Claire's ability to prepare a defense, and is likely to confuse the jury. No testimony or evidence should be permitted contending Plaintiff is unable to return to a job with Mayo-Eau Claire due to PTSD.

**Motion in Limine No. 4: Motion to Preclude Plaintiff From Referencing or Introducing Evidence of The ERD Probable Cause Finding.**

Mayo-Eau Claire believes that Plaintiff will attempt to make reference to or introduce into evidence the finding of probable cause made by the Wisconsin Equal Rights Division in retaliation to Plaintiff's administrative complaint filed jointly within the ERD and EEOC. Such evidence should be excluded pursuant to Rules 401 and 403, Fed. R. Evid.

The decision to admit or exclude preliminary findings by administrative agencies in discrimination cases is left to the sound discretion of the Court. *McCluney v. Joseph Schlitz Brewing Co.*, 728 F.2d 924, 929–30 (7th Cir. 1984). Many courts have held that excluding such evidence is proper where the evidence considered by the agency could be presented to the jury. There is a substantial danger that, in such circumstances, the findings of the administrative agency will be presented to the jury either as a de facto legal opinion, or with the suggestion that the matter before the jury has already been decided.

For instance, in *Tulloss v. Near N. Montessori Sch., Inc.*, 776 F.2d 150, 154 (7th Cir. 1985), the Seventh Circuit upheld the district court's decision to exclude the EEOC's initial determination of discrimination because the determination had low probative value and created the risk of the jury believing that the EEOC had already decided the matter before them. The district judge "specifically relied on his obligation to provide a judicial forum for the ultimate resolution of the discriminatory employment claim and to base his judgment on the evidence presented to him." *Id.* "He believed that consideration of the determination was tantamount to saying 'his has already been decided and here is the decision.'" *Id.* Based on the "circumstances of this case, where it is not contended that the evidentiary material available to the EEOC was not also available to the district court," the Seventh Circuit found that the trial judge did not abuse his discretion in excluding the initial determination.

Other jurisdictions follow this approach. *See, e.g. Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984). In Johnson, the Eighth Circuit also upheld a district court's decision to exclude the EEOC's initial determination. The court found that, "[b]ecause substantial evidence was presented to the jury on all matters summarized in the report, there is little probative value in the EEOC's conclusory statements regarding the same evidence." *Id.*

11

Admitting "the report under these circumstances would amount to admitting the opinion of an expert witness as to what conclusions the jury should draw . . . ." *Id.*

Here, Plaintiff is able to submit all of the evidence considered by the Wisconsin Equal Rights Division to the jury. The ERD's factual findings and legal conclusions have no probative value, as the trial of this matter is de novo, and the ERD's conclusions are not entitled to any deference by this Court or the jury. Referring to or introducing any of the ERD's findings of fact or conclusions of law would mislead the jury into believing that the ERD has decided the case before it or that the ERD's determination is the equivalent of an "expert" report. This creates a substantial risk of unfair prejudice to Mayo-Eau Claire. Further, substantial time would be wasted as Mayo-Eau Claire would not only need to defend the substance of Plaintiff's charges, but would also be required to examine the investigative techniques and decision-making process of the ERD.

As such, Plaintiff should be prohibited from referring to or from introducing into evidence the finding of probable cause made by the Wisconsin Equal Rights Division.

**Motion in Limine 5:** **Motion to Preclude Plaintiff from Referencing, Arguing or Introducing Evidence Relating to Her Difficulties in Taking or Picking up Her Daughter to Daycare.**

Plaintiff was employed as an operating room nurse for Mayo-Eau Claire for approximately 12 years. (Dckt #1, ¶¶ 4–7). In the summer of 2010, she was promoted to a supervisor position in perioperative services. (Dckt #1, ¶ 7). Plaintiff alleges that, as a supervisor, she was told that she was not required to report to work before 5:45 a.m. Plaintiff alleges that Mayo-Eau Claire scheduled her to work at 5:30 a.m. on many days. On these days, Plaintiff claims that she "had to ask her teenage daughter to take her younger child to daycare before school, which created difficulties and stress" for them. (Dckt #1, ¶ 12).

Mayo-Eau Claire anticipates that Plaintiff may attempt to introduce this evidence at trial. This evidence is irrelevant to the issues for trial and should be excluded. Plaintiff's Complaint is limited to her allegations of disparate treatment, failure to accommodate, and an FMLA interference violation. (Dckt #1). Evidence of her alleged stress or hardship relating to finding alternate transportation for child daycare is not relevant.

Even if Plaintiff could somehow establish that this evidence has some bearing on her ADA or FMLA claims, this Court should exclude such information pursuant to Fed. R. Evid. 403. This rule provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste or time, or needless presentation of cumulative evidence."

Permitting the jury to hear evidence about Plaintiff's stress when she could not take her daughter to child care would result in unfair prejudice to Mayo-Eau Claire and require a series of "mini-trials" on the facts and circumstances of this issue. *See, United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir. 1987) ("[u]nfair prejudice is measured by the degree to which a jury responds negatively to some aspect of evidence unrelated to its tendency to make a fact in issue more or less probable."); *Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989) (affirming a district court's exclusion of evidence and ruling that admitting certain testimony "may have very well necessitated a 'trial within a trial'").

Instead of focusing on the actual issues of this case, admission of this evidence would require an investigation of irrelevant topics, such as the logistics of taking her daughter to daycare or whether alternative child care options were available to her. A mini-trial would cause confusion for the jury, undue delay and prejudice to Mayo-Eau Claire.

Relatedly, Plaintiff claims that on December 8, 2010, the day she was suspended, she was unable to immediately pick up her daughter from daycare because she had been required to leave her badge at work during the period of suspension. Plaintiff alleges that she suffered distress as a result of this incident. Setting aside the practicality that she simply could have telephoned the daycare to let them know she was on the way, any claimed distress is irrelevant to the issues in this case, certainly to any issue on liability.

For these reasons, Plaintiff should be prohibited from referring to or introducing any evidence relating to her alleged inability to take her daughter to or pick her daughter up from daycare.

**Motion in Limine No. 6:** **Motion to Preclude Plaintiff From Referencing or Introducing Evidence Regarding Allegations of Wrongful Wage and Hour Conduct by Mayo-Eau Claire Unrelated to Plaintiff's Claimed ADA and FMLA Violations.**

Mayo-Eau Claire anticipates that Plaintiff will attempt to introduce evidence at trial regarding alleged violations of wage and hour laws unrelated to the causes of action detailed in her Complaint. Specifically, Plaintiff may attempt to introduce evidence that her supervisor suggested or required her to "work off the clock."

This evidence is not relevant because it has no bearing on her ADA or FMLA claims. Plaintiff's Complaint is limited to her claims of disparate treatment disability discrimination, failure to accommodate a disability, and an alleged FMLA violation. As a result, any evidence related to purported violations of employment laws other than the ADA and FMLA laws at issue in this case is irrelevant and should be excluded from evidence. *See*, Fed. R. Evid. 402.

Even if Plaintiff could somehow establish that her allegations of other wrongful conduct by Mayo-Eau Claire had some minimal relevance to her ADA or FMLA claims, this Court

should exclude such evidence pursuant to Fed. R. Evid. 403. Permitting the jury to hear evidence that Mayo-Eau Claire violated another employment law not at issue would result in unfair prejudice, confusion, potentially misleading the jury and will cause unnecessary delay. Substantial time would be wasted as Mayo-Eau Claire would not only need to defend the substance of Plaintiff's allegations in her Complaint, but would also be required to examine the unrelated and collateral issues of a wage and hour claim.

This would result in a series of "mini-trials." In such situations, "district courts may properly exclude [evidence] under Rule 403 to avoid a series of collateral 'trial[s] within the trial' which would result in confusion and undue delay." *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 687 (7th Cir. 1998); *see also Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989) (affirming a district court's exclusion of evidence and ruling that admitting certain testimony "may have very well necessitated a 'trial within a trial'").

Evidence related to any allegations by Plaintiff that Mayo-Eau Claire engaged in alleged wrongful conduct unrelated to her ADA and FMLA claims should be excluded from the trial. Such evidence has no probative value whatsoever, and, even if minimally relevant, would be highly prejudicial, confusing, misleading, and time wasting. For these reasons, Plaintiff should be prohibited from referring to or introducing any evidence relating to alleged violations of employment laws not at issue in this case.

Dated this 21st day of February, 2014.

AXLEY BRYNELSON, LLP

s/ *Michael J. Modl*
Michael J. Modl
Michael J. Westcott
Attorneys for Defendant

2 E. Mifflin Street, Suite 200
Madison, WI 53703
Telephone: (608) 257-5661
Facsimile: (608) 257-5444
E-mail: mmodl@axley.com
E-mail: mwestcott@axley.com