UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

AMY J. WALTERS

        Plaintiff,

vs.                                     Case No. 12-CV 804

MAYO CLINIC HEALTH SYSTEM-
EAU CLAIRE HOSPITAL, INC.

        Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE

Plaintiff, Amy J. Walters, by her attorneys Skinner and Associates and Bakke Norman, S.C. by Carol N. Skinner, responds to Defendant's Motions in Limine as follows.

### I. Defendant's Motion to Exclude Evidence, Argument or Questions Relating to the Opinions or Expert Report of Dr. Jay Collier Should Be Denied.

Defendant bases its argument supporting this motion on the mistaken contention that Dr. Collier will not be testifying as Plaintiff's expert. To the contrary, Dr. Collier will provide expert testimony as Walters' treating psychiatrist. As such, he will offer opinions as to Walters' mental health and treatment therefor, her ability to work during the time period he was treating her, and damages resulting from the events complained of in this case, just as indicated in Plaintiff's Disclosure of Expert Witnesses.

After *Defendant* suggested that Walters had the intention of pursuing a malpractice claim against Collier, Collier's attorney took the position that he would not serve as Plaintiff's expert. Since that time, the parties have reached agreement that neither will offer any evidence or

1

argument relating to allegations of misconduct. Further, even if Dr. Collier's testifying as a treating expert was in question, Plaintiff is able to establish compelling circumstances that Dr. Collier's expert testimony as her treating physician during relevant time periods is uniquely necessary to assist the trier of fact, as discussed in Wisconsin's seminal expert privilege case, *Dawn Alt v. Cline,* 224 Wis. 2d 72; 1999 Wisc. LEXIS 13. While Dr. Collier will not be asked to provide any new opinions, or engage in out of court preparation, he will testify as to those opinions contained in his Rule 26(a)(2)(C) Summary of Facts and Opinions disclosed to Defendant.

There will be no attempt or need to introduce Collier's opinions or expert report through other witnesses, as Defendant contends. Walters' therapist, Margo Hecker, will not "parrot the opinions of another expert." (Def. Motion p. 2). Hecker may rely on information or opinions contained in Dr. Collier's records in reaching her own opinions and conclusions about Walters' mental health condition and treatment, as permitted by Fed. R. Evid. 703. An expert may base an opinion on facts or data in the case that the expert <u>has been made aware of</u> or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. (*Id;* emphasis added.) *See Boim v. Holy Land Found. for Relief and Dev.*, 511 F.3d 707 (7th Cir. 2007); *aff'd.*, 549 F.3d 685 (7th Cir. 2008). Since Collier's report has not been, nor will be withdrawn, Defendant's fear of a "wholesale adoption of a withdrawn expert report" is unfounded.

Defendant's suggestion that Plaintiff's therapist, Margo Hecker, is not qualified to independently verify Dr. Collier's opinions is also without merit. Hecker is a masters level therapist specializing in marriage and family therapy. She certainly has the expertise and

experience to make diagnoses, including those which afflict Walters. Depression, anxiety and PTSD are within Hecker's area of expertise, and she is well qualified to independently verify Collier's opinions, as well as rely on the facts or data in Collier's treatment records as bases for her own opinions about Walters' condition.

Lastly, Defendant claims that it would be severely prejudiced if Dr. Collier's expert opinions are admitted. This is a bare assertion without any supporting grounds, or based on the incorrect basis that Collier is not testifying as Plaintiff's expert. Defendant had opportunity to take a discovery deposition of Dr. Collier, and to cross examine him at Plaintiff's deposition of Collier for use at trial. There is no prejudice here, and no reason to exclude evidence relating to Dr. Collier's opinions.

## II. Defendant's Motion to Exclude Evidence, Argument or Questions relating to a Hostile Work Environment Attempts to Exclude Evidence Relevant to Issues Other Than Hostile Environment, and should be Denied.

Walters has made a claim of disparate treatment in the terms and conditions of her employment, as well as failure to accommodate, once Defendant became aware of Walters' disability. Regardless of Walters' decision not to pursue a hostile work environment claim, the evidence contained in Defendant's list of evidence that should be barred (Def. Brief., p. 5) is relevant to Defendant's discriminatory intent, its knowledge of her disability and limitations caused thereby, and its failure to accommodate Walters, all of which are in issue.

Rather than attempting to determine a way to help Walters succeed in either the Nurse Supervisor or Operating Room position, upon learning of her disability, evidence will show that Defendant did just the opposite. Defendant scrutinized Walters' attendance, failed to apprise her of performance concerns, placed her in positions for which she'd received no training, criticized her for asking for assistance, refused to address defamatory rumors which were reportedly

3

causing Walters significant anxiety, and treated her as if she were incompetent. Evidence of Defendant's treatment of Walters after learning of her disability, in contrast to her treatment before disclosure of her disability, and/or its treatment of similarly situated non-disabled employees is certainly relevant to show Defendant's discriminatory animus and failure to accommodate Walters, suggesting that it no longer valued Walters and wanted her to fail.

Defendant's claim that it did not know that Walters' disability substantially affected any major life activity is belied by its decision to send her for a psychological evaluation on December 21, 2010, due to concerns that she did not have sufficient focus to perform her duties. (*See* Pltf PFOF 154; Dkt. 47.) This evidence, like the other items listed in Defendant's motion, is relevant to the issues to be decided and should not be excluded.

### III. Defendant's Motion to Exclude Testimony and Evidence on Plaintiff's Inability to be Reinstated Should be Denied.

Once again, Defendant supports its argument for this motion on an unfounded basis that Plaintiff is claiming "for the first time" that she cannot be reinstated to her former workplace. Plaintiff has requested from the very start of this case relief in the form of "reinstatement or front pay until such time as Walters is able to resume gainful employment at a similar salary, and prejudgment interest on such amounts." There would be no prejudgment interest on reinstatement. There is obviously no need to amend pleadings, contrary to Defendant's claim (Def. Brief, p. 7); its entire argument regarding rule violations is thus without basis.

Defendant claims that it was somehow unaware that Walters, a person with known anxiety issues including post traumatic stress disorder, may have significant difficulty returning to a workplace comprising the same people who discriminated against her when they discovered her mental illness. Defendant had every opportunity to discuss this issue with Walters during her seven hour deposition, but neglected to do so. Similarly, Defendant had the opportunity to

4

question Walters' vocational expert, Kevin Schutz, about his opinion that Walters has suffered a loss in earning capacity due to her treatment by Defendant.

In his vocational report, Mr. Schutz opines that Walters will likely never reach the earning potential she enjoyed while employed by Defendant, due in large part to her involuntary termination by one of the very few hospital-based healthcare providers in the area, after 12 years of employment. <u>Defendant was provided this report in August, 2013</u>, likely before Defendant's vocational expert was even retained. Defendant questioned Schutz at length at his January 2014 deposition regarding the lost earning capacity claim.

Defendant also mischaracterizes the reinstatement issue contained in Margo Hecker's Summary of Facts and Opinions. "In an amended expert report, Plaintiff has alleged, for the first time in this litigation, that Plaintiff cannot be reinstated with Mayo-Eau Claire due to Post-Traumatic Stress Disorder (PTSD)." (Def. Brief, p. 6.) In fact, Hecker's report actually states, "In view of Plaintiff's increased emotional distress following her termination by Mayo Health System, it would not be feasible or in her best interests to reinstate her to her former place of employment." Such testimony is in no way a "dramatic change in the Plaintiff's arguments in this litigation." Nor does it "directly contradict the requested relief" Plaintiff seeks in the Complaint. *(Id.)*

After misstating Hecker's opinion, Defendant claims unfair surprise by "this new PTSD issue." (Def. Brief, p. 8.) It goes on to imagine that "Plaintiff's claim of PTSD to date related solely to a claim of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *(Id.)* There is no basis for such a statement. The ▓▓▓▓▓▓▓ may be the underlying *reason* for Walters' PTSD, but Walters has made it clear from the very start, *to wit*, her October 5, 2010 anxiety attack, that

she was experiencing a reoccurrence of her PTSD. Both Wensink and Heutmaker were aware of this. (*See* Pltf. PFOF No. 65; Dkt. 47)

Defendant's entire argument regarding this motion relies on the unfounded premise that Walters ever limited her relief request to reinstatement, or that Defendant had no knowledge or reasonable basis to believe that Walters would claim reinstatement to be unfeasible. Defendant complains that "none of Plaintiff's previously disclosed experts have contended Plaintiff is incapable of reinstatement due to PTSD." (Def. Brief, p. 9) First, Defendant has just recently deposed one of Plaintiff's treatment providers, Dr. Collier, and no others to date. Secondly, Defendant asked about the basis for Plaintiff's lost earning capacity claim in Interrogatory No. 22, of its first set of discovery, dated March 3, 2013. As the basis for this claim, Plaintiff responded, in part, "Plaintiff has been unable to work at all for periods of time following her treatment by Defendant..." Lastly, Defendant was notified in Plaintiff's Disclosure of Expert Witnesses, provided to Defendant in August, 2013, that all of the experts listed may provide testimony regarding Plaintiff's ability to work, and damages resulting from the events complained of in this case.

Defendant claims, "At the time Plaintiff submitted this disclosure, all of the parties, including the Plaintiff, expected that any testimony concerning the Plaintiff's ability to work would center upon the Plaintiff's ability to perform her prior job and be reinstated." (*Id.*) This claim borders on the absurd. The disclosure was accompanied by Plaintiff's vocational expert report, which is primarily about her lost earning capacity claim. One would not have a lost earning capacity claim if she planned to return to her former position. Defendant should not now be heard to claim unfair prejudice because it made the decision to have "its experts, both its psychological and vocational expert, proceed based on Plaintiff's request for reinstatement." (*Id.*,

pp. 9-10.) As previously noted, Plaintiff requested front pay in her Complaint; Defendant was in possession of Mr. Schutz' vocational report likely before retaining either of its experts, and certainly before either evaluated Walters. There is clearly no basis to exclude testimony or evidence regarding Plaintiff's inability to be reinstated to her former workplace.

As to Defendant's **fourth Motion in Limine** regarding the ERD Probable Cause finding, Plaintiff does not intend to introduce or reference the fact that there was such a finding.

### IV. Defendant's Motion to Exclude Evidence Relating to Difficulties Plaintiff Experienced Regarding Daycare Should be Denied.

When interviewing with Heutmaker for the perioperative nurse position, Walters was assured that she would not be required to start before 5:45 am, after the hospital daycare facility opened. The fact that this turned out to be untrue is relevant to Heutmaker's credibility. As well, there will be testimony that this situation exacerbated Walters' anxiety, which was reported to Heutmaker. This is relevant to Walters' failure to accommodate claim, as well as the issue of the employer's knowledge of Walters' limitations which affected her ability to perform her job.

Heutmaker testified in her deposition that Walters was frequently on her cellphone at work. Walters and her older daughter will testify that Walters received calls at work due to difficulties at home caused by Heutmaker's misrepresented start time for the position. Although Walters discussed the problem with Heutmaker, informing her of the stress it was causing her; Heutmaker did nothing to assist. This daycare issue continued throughout the fall of 2010. This evidence is relevant to Defendant's claim that it was unaware of limitations Walters had which affected her ability to work. It is also relevant to Plaintiff's claim of failure to accommodate. As such, it tends to make a fact in issue more or less probable, and is thus proper pursuant to Fed. R. Evid. 401.

The probative value of this evidence is clearly not outweighed by any unfair prejudice or other dangers enumerated in Fed. R. Evid. 403. Since this evidence relates to what Defendant knew, and did (or didn't do) about the issue and how it affected plaintiff's ability to perform her job, no "logistics" evidence would be indicated. Admission of the evidence would require no "series of mini-trials," as Defendant suggests.

Relatedly, Walters' being locked out of her daughter's daycare because her badge was taken away as a result of four alleged tardies did cause Walters distress. If Defendant wants to argue that Walters should have had the presence of mind to telephone the daycare after being demoted, suspended, and escorted from her job of twelve years, it can certainly do so. There are no grounds for excluding this testimony as it relates to emotional damages.

## V.     Plaintiff Should Not be Precluded From Certain Evidence Regarding Defendant's Conduct As it Relates to Wage and Hour Issues.

Evidence that Walters' supervisor, Lisa Heutmaker, suggested to both Walters and her peer, Denise Pendergast, that they should work off the clock is relevant to the issue of Heutmaker's credibility. Not only did she suggest working off the clock, she claimed in deposition that she did not, contrary to both Walters' and Pendergast's testimony. Heutmaker also told Walters to change her clock-in time to later, even after Walters told Heutmaker that she was working during the time she was clocked in.

While Plaintiff does not intend to pursue any argument regarding whether Defendant engaged in unfair labor practices, the clocking issue was part of Walters' Fair Treatment Complaint filed when she was demoted and suspended on December 8, 2010, and discussed and investigated by Colleen Skold and other managerial employees. The fact that Defendant's management elected to believe Heutmaker, a one year employee, over Walters, a twelve year

employee with a very good work record, and did not even ask Pendergast about the issue suggests discriminatory animus.

While the underlying FLSA issue may have questionable relevance and will not be pursued in any event, Heutmaker's suggestions and statements are relevant to the issue of her credibility. Defendant's management's response to Walters' concerns about being instructed to work off the clock is relevant to Defendant's treatment of Walters once it became aware of her disability. Given the limited evidence on this topic, and its clear relevance to issues raised in this case, Plaintiff should not be precluded from offering such evidence.

## CONCLUSION

Walters does not intend to offer evidence of the ERD probable cause finding, nor argue that Defendant violated wage and hour laws. The remaining evidence which Defendant attempts to exclude in its motions, however, is relevant to issues to be determined by the fact finder in this case, and should not be excluded. Defendant's motions as to such evidence must be denied.

Dated March 7, 2014.

**SKINNER AND ASSOCIATES**

By: _____
Carol N. Skinner
Attorney ID #1017307
Attorneys for Plaintiff
212 Commercial Street
Hudson, WI 54016
(715) 386-5800
cskinner@skinnerlaw.com

9