UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

AMY J. WALTERS,

       Plaintiff,                                          Case No. 12-cv-804

v.

MAYO CLINIC HEALTH SYSTEM –
EAU CLAIRE HOSPITAL, INC.

       Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE**

---

NOW COMES Defendant Mayo Clinic Health System – Eau Claire Hospital, Inc. ("Mayo-Eau Claire"), by its attorneys, Axley Brynelson, LLP, and for its response to Plaintiff's Motions in Limine, states as follows:

**MOTIONS IN LIMINE NO. 1: EVIDENCE OR ARGUMENT RELATING TO PLAINTIFF'S MARRIAGE TO BILL PARSONS.**

    **I. Walters' Marriage to Parsons is Relevant to the Weight of Parsons' Testimony and to Walters' Credibility.**

In Walters' view, her marriage to co-worker William Parsons has no relevance to the claims or damages she alleges in this lawsuit and should be excluded under Fed. R. Evid. 401. However, her asserted mental condition and disability, as evidenced by her conduct and interactions with co-workers and supervisors during the late 2010 – early 2011 timeframe, are central to her discrimination claims in this lawsuit. (Dckt #1, ¶¶ 13, 16, 34, 36, 47, 53, 61)(Complaint). It was during this time that Walters and Parsons began a dating relationship that resulted in their marriage following Walters' termination in April 2011. Because Parsons had more than a casual co-worker relationship with Walters, he is uniquely positioned to testify to his

observations of Walters' mental and physical condition during the time period leading up to her termination. He spent considerably more time with the Plaintiff outside of the hospital than a typical co-worker. The fact that they married is entirely relevant for the jury's consideration of how much weight to give to Parsons' testimony.

Walters' marriage to Parsons is likewise relevant to Walters' credibility. Walters is expected to testify that she married Parsons solely for the purpose of continuing health insurance coverage following her termination. (Dckt # 116, p. 3)(Plaintiff's Motions in Limine).  She claims that she had a conversation with Parsons on this topic. (*Id.*) However, Parsons explicitly denies ever having such a conversation with Walters.  To Parsons, their marriage was simply the culmination of their dating relationship. The jury should be permitted to consider this testimony in their efforts to determine Walters' credibility.

### II. The Fact of Walters' Marriage to Parsons is Not Unfairly Prejudicial and is Not Offered for any Prejudicial Purpose.

The Plaintiff also seeks to exclude any evidence on the issue of the marriage under Fed. R. Evid. 403 because it may tend to unfairly prejudice the jury into believing that Walters "is a bad person for marrying a person for insurance coverage." (Dckt # 116, p. 4).  Federal courts of appeal have cautioned district courts against the exclusion of evidence under this rule: [T]he application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Sawyer*, 799 F.2d 1494, 1506 (11th Cir. 1986)(citations omitted).  In considering a motion to exclude evidence under Rule 403, courts should favor the admission of evidence.  The United States Court of Appeal for the Eighth Circuit explained, "In weighing the probative value of evidence against the dangers and considerations enumerated in

Rule 403, the general rule is that the balance should be struck in favor of admission." *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980).

Walters' argument regarding unfair prejudice lacks validity. There is no evidence that a jury would be unfairly prejudiced to learn that Walters married a co-worker. A jury could easily view the evidence of Walters' marriage to Parsons in a neutral or non-prejudicial manner. Jurors may even sympathize with Walters for entering into a marriage so she could maintain health insurance for herself and her two children.

Additionally, Mayo – Eau Claire does not seek to introduce evidence of Walters' marriage for any prejudicial purpose. It seeks to admit evidence of the marriage because the jury is entitled to know the context of Walters' and Parsons' relationship so it can give appropriate weight to his testimony about Walters' mental state. Moreover, Parsons' testimony about the reasons for their marriage directly addresses Walters' credibility, a topic that is centrally at issue in this trial. Accordingly, Mayo Clinic – Eau Claire requests that the Court deny this motion in limine.

**MOTIONS IN LIMINE NO. 2: EVIDENCE OR ARGUMENT RELATING TO PLAINTIFF'S PERSONAL RELATIONSHIP WITH DR. EDUARDO PEREZ.**

**I. Walters' Personal Relationship with Dr. Perez is Relevant to Explaining Her Employment Performance, Analyzing her Claim for Damages, and Impeaching her Credibility.**

The Plaintiff seeks to exclude any evidence of her personal relationship with Dr. Eduardo Perez as not relevant under Fed. R. Evid. 401. Dr. Perez was a neurosurgeon and co-worker of Walters who became her friend during the summer of 2010 and with whom she became intimate once she undertook the supervisory job at the heart of this lawsuit. (Dckt # 116, p. 4). From a global perspective, Mayo – Eau Claire had a nurse in a leadership and supervisory role engaged in a romantic relationship with a doctor. Testimony concerning Dr. Perez's personal relationship

3

with Walters is relevant for several reasons. It assists in explaining Walters' mental state and her actions which influenced Mayo-Eau Claire's disciplinary decisions. Such testimony also undermines Walters' claim for damages and impeaches her credibility.

The activities and behaviors surrounding Walters' budding relationship with Dr. Perez in late 2010 are a part of the performance issues considered by Mayo – Eau Claire in their coaching and discipline of her. Lisa Heutmaker, Walters' supervisor in late 2010, is expected to testify that Walters' personal relationships with Dr. Perez and Parsons during late 2010 manifested via unprofessional behavior throughout the workday. She and others observed Walters appearing distracted and not focused on her job duties while she phoned and spent an inordinate amount of time talking to Dr. Perez and Parsons by her office. Heutmaker discussed with Walters how the relationship with Dr. Perez and the relationship with Parsons were distracting her while at the job and keeping her from performing her job as expected.

The nature of Walters' interactions with Dr. Perez and Parsons impacted hospital supervisors' impressions of her level of professionalism on the job. In November 2010, Lisa Heutmaker met with Laurie Wensink and Julie Norgaard to discuss the amount of time Walters and Dr. Perez were spending together and its negative impact upon hospital employees. Accordingly, testimony of Walters' relationship with Dr. Perez is relevant to explain Walters' actions in late 2010 – 2011 and her interactions with her supervisors during the same period.

Additionally, testimony about Walters' relationship with Dr. Perez is relevant to Walters' damages claim and her credibility. Walters claims that she was monetarily impacted by the loss of her job which increased the emotional distress that she is seeking to be compensated for through this lawsuit. However, there is expected testimony that Dr. Perez gave money to Walters and assisted her financially because of their close personal relationship. Such testimony

serves to negate Walters' claims of dire financial hardship following her termination. Moreover, to the extent that Walters denies receiving money from Dr. Perez, such testimony calls into question her credibility and truthfulness.

> **II. The Probative Value of Testimony about Walters' Relationship with Dr. Perez is Not Substantially Outweighed by the Risk of Unfair Prejudice. Moreover, even if Limited Background Information about the Relationship is Somewhat Prejudicial, Only a Minor Limiting Instruction is Necessary.**

Walters seeks to exclude testimony about her personal relationship with Dr. Perez as unfairly prejudicial under Fed. R. Evid. 403. She believes that if a jury hears she was having a relationship with a married man the jury may unfairly develop a negative view of her. (Dckt #116, p. 5). However, Walters has contended that Dr. Perez lied to her about the status of his marital relationship. Under such circumstances, there is no reason to believe that a jury would view Walters in a negative light.

Additionally, the probative value of testimony about this personal relationship outweighs any danger of unfair prejudice. Testimony regarding their relationship directly bears upon issues at the heart of the Plaintiff's claims, including the reasons for her poor performance at work during the 2010-2011 time frame. It also bears upon her claim of monetary damages. Accordingly, any prejudice a jury may develop does not substantially outweigh the strong probative value of this evidence.

Moreover, to the extent the Plaintiff is concerned the jury will forever emblazon her with a scarlet letter because she had a personal relationship with a married man, there is no necessity that Dr. Perez's marital status be elicited at trial. Testimony about their personal relationship can be elicited by counsel without any inquiries about his marital status. Accordingly, this motion in limine should be denied outright or, in the alternative, denied with a simple limiting instruction excluding testimony about Dr. Perez's marital status. *See Faigin v. Kelly*, 184 F.3d 67, 80 (1st

Cir. 1999)("Rule 403 controversies by their very nature present competing considerations, and compromise is often the best solution for a particularly knotty Rule 403 problem.")

**MOTIONS IN LIMINE NO. 3: PLAINTIFF'S RECEIPT OF SOCIAL SECURITY INCOME IS RELEVANT AND ADMISSIBLE.**

In exercising their discretion with respect to the collateral source rule, courts are guided by certain equitable principles. *Flowers v. Komatsu Mining Sys., Inc.*, 165 F.3d 554, 558 (7th Cir. 1999). The collateral source rule operates "not to prevent the plaintiff from being overcompensated but rather to prevent the tortfeasor from paying twice. In an employment case, if the employer is the source of the funds at issue, then the payments can be deducted from the award." *Id.* at 558; *See also Phillips v. Western Co. of North America,* 953 F.2d 923 (the court needs to determine the "precise source of the payments for disability" to determine if the collateral source rule applied). In *Flowers,* the court upheld the district court's discretion to set off the plaintiff's social security payments in determining the amount of back pay awarded. *Flowers,* 165 F.3d at 558. Other Circuits have reached a similar result. *See Giles v. General Electric Co.*, 245 F.3d 474, 495 (5th Cir. 2001) (collateral source rule did not preclude setting off of social security disability benefits paid to injured employee against front pay award for discharge in violation of the ADA).

In the event Plaintiff prevails at trial, Mayo-Eau Claire is entitled to a set-off for the amounts of social security disability plaintiff received. If a set off is not given, Mayo-Eau Claire will be forced to pay twice through an award of back pay and through prior contributions made through tax contributions. Therefore, Plaintiff's motion in limine seeking to bar evidence of social security income must be denied.

**MOTIONS IN LIMINE NO. 4: EVIDENCE OR ARGUMENT REGARDING ALLEGATIONS OF ILLEGAL DRUG USE BY PLAINTIFF**.

### I. Walters' Alleged Drug Use is Relevant to Explaining her Weight Loss and Behaviors in Late 2010-2011.

The Plaintiff seeks to characterize her alleged illicit drug use during 2010-2011 as having no relevance to the claims in her lawsuit. (Dckt # 116, p. 9). However, the Plaintiff has made her physical and mental condition during this time period the focal point of her claimed disability and claim for damages. (Dckt # 1, ¶¶ 13, 16, 34, 36, 47, 53, 61). She has alleged that the stress of her supervisory position "was affecting her ability to sleep and eat, and resulted in significant weight loss, the latter of which was readily apparent." (Dckt. #47, ¶ 88)(Plaintiff's Proposed Findings of Fact). She has made a specific issue of her weight loss during this period and how her weight decreased to less than 100 pounds by December 2010. (*Id.,* ¶ 89). She said that her supervisors had commented on her weight loss and she offered the explanation that her depression medications had been doubled. (*Id.*, ¶ 161). She claims that her weight loss should have tipped off her supervisors to her disability. As a result, the Plaintiff's own arguments and focus upon her weight loss and physical conditions expose her to inquiries and evidence of alternative causes of her condition.

Testimony by Walters' co-worker Parsons that he and Walters were taking illicit drugs is a very reasonable alternative explanation for why Walters experienced weight loss and had trouble sleeping. Walters seeks to trivialize this nurse's anticipated testimony as being the vindictive lies of an ex-husband. However, the expected testimony that they were both taking drugs has classic hallmarks of credibility because it is against this nurse's own interests in continued employment to give this testimony. Moreover, Parsons' testimony would further

substantiate the discussions amongst other nursing co-workers that Walters' low weight was related to drug use.

A jury should be permitted to weigh the credibility of such testimony and come to its own conclusions as to the reasons for the Plaintiff's mental and physical condition. If the jury finds the testimony of Parsons to be credible, what he states about his and Walters' drug use could readily explain some of Walters' physical symptoms.

## II.   The Probative Value of Walters' Alleged Drug Use is Not Substantially Outweighed by any Danger of Unfair Prejudice.

The Plaintiff also seeks to exclude any evidence of Walters' alleged illicit drug use on the ground that such evidence would be too prejudicial to the jury's view of Walters. Under Rule 403, evidence should only be excluded if its probative value is substantially outweighed by the danger of <u>unfair</u> prejudice. *See Advisory Committee's* Note, Fed. R. Evid. 403 (Rule 403 does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is unfairly prejudicial. Evidence is only unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.") In this case, no unfair prejudice is present.

The nature of Walters' claims against Mayo-Eau Claire have opened the door to the introduction of evidence about drug use. Walters has alleged that the Defendant failed to appropriately accommodate her alleged disability of depression, evidenced by her seemingly distracted, lost and over-tired on the job behavior and failure to timely report to work. (Dckt #1, ¶¶ 13, 16, 34, 36). As a result of such allegations, Mayo – Eau Claire is entitled to introduce evidence showing Walters' behavior was caused by sources other than depression. The probative value of this testimony concerning Walters' alleged illicit drug use outweighs any

potential unfair prejudicial effect of the testimony. *See Bowden v. McKenna,* 600 F.2d 282, 284-85 (1st Cir. 1979)("Weighing probative value against unfair prejudice under Fed. R. Evid. 403 means probative value with respect to a material fact if the evidence is believed, not the degree the court finds it believable.") The Plaintiff's motion in limine on this issue should be denied to permit the jury to consider and weigh the value of the testimony.

### MOTIONS IN LIMINE NO. 5: SEEKING TO BAR CERTAIN OPINIONS OF DR. NINA BARTELL.

#### I. Background of Dr. Bartell And Her Work In This Case.

Dr. Bartell is a licensed psychologist that has been disclosed by Mayo-Eau Claire as an expert witness. She has been practicing in the psychological field for over thirty years and is a licensed psychologist in three states. She has been a board member of the Wisconsin Psychological Association since 2006, is a member of the Illinois and Missouri Psychological Associations, and a member of the American Psychological Association. Dr. Bartell currently works in private practice at Advanced Psychological Innovations, a company she owns that provides private psychological assessments and clinical services. Dr. Bartell has authored a number of professional articles and, in the past sixteen years, has presented more than 40 workshops and seminars on various psychology subjects. Her areas of specialty include depression and anxiety disorders, marital and family therapy, forensic psychology, and women's issues.

Dr. Bartell evaluated Plaintiff over an eight-hour period on November 21, 2013, and January 15, 2014. These visits consisted of an extensive clinical interview and psychological examination, including two professionally accepted psychological tests, the MMPI-2 and the MCMI-III. Dr. Bartell was also provided with a number of different records concerning the plaintiff's employment and prior medical treatment in forming her opinions. Following her

9

examination of Plaintiff and review of the relevant records, Dr. Bartell prepared a 14-page report summarizing her findings and opinions. Pages 12 and 13 of the report contain Dr. Bartell's opinions.

## II. Standard for Expert Testimony.

Federal Rule of Evidence 702 sets forth the standard for admission of expert testimony and provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." To fulfill its "gatekeeping" function under Fed.R.Evid. 702, a court is to employ a two-step analysis. First, the court must determine "whether the expert's testimony reflects scientific knowledge; that is, the court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993). This task requires that the court consider whether the testimony has been subjected to the scientific method; it must rule out "subjective belief or unsupported speculation." *Chapman v. Maytag Corp.,* 297 F.3d 682, 687 (7th Cir. 2002). Second, the court has to determine "whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. *Id.* That is, the suggested scientific testimony must 'fit' the issue to which the expert is testifying." *Id.*

The mental health status of a party is a concept that is beyond the comprehension of a jury and is the proper subject of expert testimony in an ADA case. *Steffy v. Cole Vision Corp.,* 2008 WL 7053517, *4 (E.D.Wis. 2008). Federal courts have regularly allowed psychologists and other mental health professionals to render expert testimony to assist the jury in understanding issues involving mental health. *See Walker v. Soo Line R. Co.*, 208 F.3d 581 (7th

10

Cir. 2000) (psychologist properly allowed to render expert testimony on issue of PTSD where he relied on medical, education and professional history and results from IQ test); *Bryant v. City of Chicago*, 200 F.3d 1092 (7th Cir. 2000) (psychologist's expert testimony properly permitted in employment discrimination case).

### III. The Opinions and Findings of Dr. Bartell's Report Are Admissible.

#### A. Dr. Bartell's Opinion Regarding "Appropriate Accommodations"

In opinion 2(b), Dr. Bartell states that the "appropriate accommodations would be the ones recommended by her [Plaintiff] treatment provider, namely that she continue her treatment… and be granted time for recovery in case of recurring panic attacks." Plaintiff argues that Dr. Bartell is not qualified to testify about what constitutes a "reasonable accommodation" under the ADA and, therefore, her opinion in 2(b) must be barred.

Dr. Bartell has over 30 years of experience treating patients like Plaintiff that suffer from anxiety, depression and PTSD. She has specific experience developing treatment plans for patients with anxiety, depression and/or PTSD and determining whether such patients should or are able to return to work in some capacity. While Dr. Bartell testified that she did not consider herself an expert with respect to "reasonable accommodation issues" as defined under the ADA, she testified that she has experience filling out ADA disability forms and constructing FMLA treatment plans. Dep., p. 15. She also has dealt with the provisions of the ADA through the treatment of her own patients. *Id.*

Dr. Bartell's training, experience and education makes her qualified to testify about an appropriate accommodation for Plaintiff, namely, that she be able to continue her treatment. Contrary to Plaintiff's assertion, Dr. Bartell does not opine that allowing future treatment for Plaintiff's condition constitutes a "reasonable accommodation" as that term is defined under the

11

ADA. That determination is an ultimate fact to be decided by the jury. As addressed by Dr. Bartell in her report, the only information Mayo had about Plaintiff's condition was her October 2010 FMLA certification, which recommended future treatment by her doctor for episodic flare-ups of her condition. Dr. Bartell's background in treating patients like Plaintiff and filling out FMLA certifications and disability forms gives her the expertise to render opinions on what course of action and accommodations were appropriate in light of the information available to Mayo. Because Dr. Bartell has experience treating these conditions and filling out the appropriate FMLA and ADA paperwork, she is qualified to render the opinion contained in section 2(b) of her report.

### B. Dr. Bartell's Opinions Regarding Plaintiff Hiding Her Condition From Mayo.

Dr. Bartell's opinion that Plaintiff went to great pains to hide her condition from Mayo is based on a lengthy clinical interview with Plaintiff, two written psychological exams and Dr. Bartell's review of Plaintiff's voluminous medical and employment records. In the clinical interview, Plaintiff informed Dr. Bartell of many different episodes in her life where she hid her mental condition from others. For instance, Plaintiff advised Dr. Bartell that "she spent many years trying to hide her past traumatic circumstances and mental health issues." Report, p. 4. She also provided to Dr. Bartell that her job made her feel good because she was able to "hide my life and anything that happened to me when I was a kid." Report, p. 5. This history is consistent with the allegations of Plaintiffs' own complaint which provides that she "did not disclose to her employer or coworkers her history of mental illness, and worked very hard to sustain excellent performance to avoid discovery of her illness." Compl. ¶ 10.

As an initial matter, Dr. Bartell's opinion is the proper subject of expert testimony because it establishes the status of plaintiff's mental health and will assist the jury in its

assessment of whether Mayo knew that Plaintiff was disabled at the time of her adverse employment action. *See Steffy v. Cole Vision Corp.,* 2008 WL 7053517 at *4. Further, Dr. Bartell's opinion is relevant to Mayo's defense that Plaintiff did not disclose the nature and/or extent of her disability.

Moreover, all of the above evidence that forms the basis for Dr. Bartell's opinion is reliable. *See Walker v. Soo Line R. Co.*, 208 F.3d 581 (psychologist properly based his opinions on medical, education and professional history and results from IQ test). Much of the information that forms the basis for Dr. Bartell's opinion came from the Plaintiff herself and its reliability cannot be questioned. Plaintiff's brief is devoid of any argument or explanation as to why this opinion is unreliable or based on insufficient facts or data. Accordingly, Plaintiff's motion *in limine* to bar Dr. Bartell's opinion on the secrecy of her condition should denied.

### C. Dr. Bartell's Opinions On Whether Plaintiff's Exercise of FMLA Rights Was Chilled.

Lastly, Plaintiff asks the Court to bar Dr. Bartell's opinion contained in (2)(d) regarding the chilling of Plaintiff's future use of FMLA leave under Fed.R.Evid. 401 and 403. Plaintiff asserts that the entire opinion should be barred because Dr. Bartell references Plaintiff's marriage to a co-worker for the purpose of obtaining health insurance.

As an initial matter, Dr. Bartell's singular reference to Plaintiff's marriage to a co-worker does not serve as a basis to bar Dr. Bartell's entire opinion contained in subsection (2)(d). See *Scottsdale Ins. Co. v. City of Waukegan*, 689 F.Supp.2d 1018 (N.D.Ill. 2010) (recognizing that a court may carve out inadmissible expert testimony and permit rest of expert's opinions). Plaintiff raises no other issues with the reliability of the opinion or the other bases for that opinion. Fed.R.Evid. 702. Thus, Plaintiff's request to bar opinion 2(d) in its entirety must be denied.

In any event, evidence of Plaintiff's marriage to a co-worker is relevant because it is evidence that Plaintiff will do what it takes to survive and that she will use FMLA in the future if her survival depends on it. Plaintiff has placed her future use of FMLA squarely at issue by alleging that Mayo's interference caused the chilling of her ability to take future FMLA leave. Compl. ¶ 59. Plaintiff's decision to marry a co-worker is an example of what Plaintiff will do to ensure that she receives the appropriate medical care and attention. Given this drastic action to ensure her future health benefits, it is reasonable to assume Plaintiff will take the much less drastic step of requesting FMLA if her medical condition requires it. Under Fed.R.Evid. 401, it is simply sufficient that the proffered evidence "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Here, Dr. Bartell's testimony certainly fits within the definition of Rule 401.

Lastly, Dr. Bartell's reference to Plaintiff's marriage to a co-worker is not inadmissible under Fed.R.Evid. 403, which allows the court to exclude relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice. Evidence is "unfairly prejudicial," for purpose of this rule if the evidence has an undue tendency to suggest decision on an improper basis or if the evidence appeals to the jury's sympathies, arouses its sense of horror or otherwise might cause the jury to base its decision on something other than the legal propositions relevant to the case. *Carter v. Hewitt*, 617 F.2d 961, 964 (3d. Cir. 1980). Here, Plaintiff's marriage to a co-worker does not cause horror in the jury and does not arouse their sympathies in a prejudicial manner. Further, Plaintiff will be able to combat any potential prejudice by explaining the need for the marriage and her desire to remain covered under her health insurance plan.

**MOTIONS IN LIMINE NO. 6: EVIDENCE OR ARGUMENT REGARDING CONDUCT BY PLAINTIFF'S PSYCHAITRIST.**

Motions in Limine No. 6 is unopposed.

Dated this 7th day of March, 2014.

AXLEY BRYNELSON, LLP

s/ *Michael J. Modl*
Michael J. Modl
Michael J. Westcott
Attorneys for Defendant
2 E. Mifflin Street, Suite 200
Madison, WI 53703
Telephone: (608) 257-5661
Facsimile: (608) 257-5444
E-mail: mmodl@axley.com
E-mail: mwestcott@axley.com