IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMY J. WALTERS,

                Plaintiff,                OPINION AND ORDER

    v.

                                        12-cv-804-wmc

MAYO CLINIC HEALTH SYSTEM-
EAU CLAIRE HOSPITAL, INC.,

                Defendant.

---

In advance of the final pretrial conference scheduled for this Thursday, March 13, 2014, the court issues the following opinion and order on the parties' motions in limine.

OPINION

I. Plaintiff's Motions in Limine (dkt. #115)

    A. Motion in Limine #1: Exclude evidence or argument re: plaintiff's marriage to her co-worker William Parsons

Plaintiff contends that any evidence or argument concerning Walters' marriage to Parsons and their subsequent divorce should be excluded under Rules 401 and 403. Walters' marriage did not occur until after her employment at Mayo was terminated and, therefore, plaintiff reasonably contends that it is not relevant to issues on liability. Plaintiff also contends that her marriage to Parsons has "little bearing" on the amount of damages due under the ADA or FMLA. (Pl.'s Br. (dkt. #116) 2.) Finally, plaintiff contends that any probative value regarding her brief marriage to Parsons is substantially outweighed by the prejudicial effect of this evidence. Specifically, plaintiff argues that

the marriage was not a "traditional" one because she married him so as to not lose her insurance. (*Id.* at 3.)

In response, defendant argues that this evidence is relevant to the weight of Parsons' testimony and Walters' credibility, and that it is not unfairly prejudicial. Specifically, defendant contends that Walters and Parsons began a dating relationship in late 2010 and early 2011, the timeframe central to her complaint. In light of this relationship, the defendant maintains that Parsons is "uniquely positioned to testify to his observations of Walters' mental and physical condition," and "[t]he fact that they married is entirely relevant for the jury's consideration of how much weight to give to Parsons' testimony." (Def.'s Opp'n (dkt. #142) 1-2.) Defendant further contends that Parsons will testify that Walters neither married him for insurance nor told him this, which defendant maintains is relevant to the jury's assessment of Walters' credibility. Finally, defendant contends that the fact that Walters was married to Parsons is neither inherently prejudicial, since the jury could view it as neutral or non-prejudicial, nor unfairly so.

The court will grant in part and deny in part plaintiff's motion. In the liability phase of the trial, should Parsons testify, the court will not exclude evidence of a dating relationship during the relevant period of time encompassing plaintiff's claims (October 2010 to April 2011), since this evidence is arguably relevant to weighing Parsons' understanding of Walters' condition and conduct at the time. The fact of their subsequent marriage or divorce and particularly Walters' reason for marrying Parson, is not sufficiently relevant to the liability phase of this trial that it offsets the possible

prejudice and irrelevant side issues that any discussion of Walters' and Parsons' relationship *after* she left defendant's employ would likely engender.  Accordingly, this evidence will stay out of the liability phase of trail unless plaintiff opens the door.  Finally, the court reserves on whether evidence of their post-employment relationship can come in during the damages phase.

> B.  Motion in Limine #2: Exclude evidence or argument relating to plaintiff's personal relationship with Dr. Eduardo Perez

Plaintiff also seeks an order excluding information about her personal relationship with Dr. Eduardo Perez under Rules 401 and 403.  According to Walters, Perez and she "became friends outside of work during the Summer of 2010, and after Walters moved off Perez's team and into her supervisor role, there were occasions thereafter when they became intimate."  (Pl.'s Br. (dkt. #116) 4.)  Perez was married at the time, though separated from his wife.  Walters and Perez apparently began "dating during the Summer of 2011, after Perez's marriage ended and Walters' employment had been terminated."  (*Id.*)  Plaintiff contends that her personal relationship with Perez is not relevant to her claims and that this evidence would be unduly prejudicial both because they were co-workers and were intimate while Perez was still married.

In response, defendant argues that this evidence is relevant in "explaining Walters' mental state and her actions, which influenced Mayo-Eau Claire's disciplinary decision," and it "undermines Walters' claim for damages and impeaches her credibility."  (Def.'s Opp'n (dkt. #142) 4.)  Defendant specifically contends that Walters' budding relationship with Perez in the Summer of 2010 was observed by others, deemed

distracting, and impacted hospital supervisors' impressions of her level of professionalism. Moreover, defendant contends that Perez provided money to Walters, which would "negate Walters' claims of dire financial hardship" and "call into question her credibility and truthfulness" if she were to deny it. (*Id.* at 5.)

The court will grant in part and deny in part this motion. During the liability phase of the trial, evidence of Walters' relationship with Perez during her employment by defendant will be admissible *only* to the extent the relationship impacted the impressions of Walters' supervisors of her professionalism *and* influenced the supervisors' decision to discipline and terminate Walters.[1] Regardless, the fact that Perez was married at the time has no similar relevance and is, in any event, too charged with prejudice and prurient interest to justify its admission for any purpose. The court reserves on whether evidence of Perez providing Walters with money after her employment was terminated should be admitted during the damages phase of this trial.

### C. Motion in Limine #3: Exclude evidence or argument relating to plaintiffs' receipt of social security income

Plaintiff moves to exclude any evidence or argument about Walters' receipt of social security enrollment pursuant to the collateral source rule and Rule 403. Plaintiff argues that the court should exercise its discretion and find that Walters' social security income as a collateral source payment should not be deducted from a damages award,

---

[1] In so holding, the court is *not* opining that such a relationship is cause for disciplinary or terminating Walters, especially given their relative positions of authority. Accordingly, should defendant choose to go down this route, plaintiff may offer a curative instruction for the jury.

making any evidence of her social security payments irrelevant under Rule 401. (Pl.'s Br. (dkt. #116) 6-7 (citing *EEOC v. O'Grady*, 857 F.2d 383 (7th Cir. 1988); *Schuster v. Shepard Chevrolet, Inc.*, 2002 WL 507130 (N.D. Ill. 2002)).) In the alternative, plaintiff argues that introduction of this evidence in support of defendant's anticipated argument that she is not seriously seeking employment would be unfairly prejudicial.

In response, defendant contends that the court should offset the amounts of social security disability plaintiff received, because otherwise defendant "will be forced to pay twice through an award of back pay and through prior contributions made through tax contributions." (Def.'s Opp'n (dkt. #142) 6 (citing *Flowers v. Komatsu Mining Sys., Inc.*, 165 F.3d 554, 558 (7th Cir. 1999)).)

"The purpose of the collateral source rule is not to prevent the plaintiff from being overcompensated but rather to prevent the tortfeasor from paying twice." *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986). As such, the rule focuses on "what the tortfeasor and collateral source should pay, not on what the plaintiff should receive." *O'Grady*, 857 F.2d at 389. "It is within the district court's discretion to set off -- or not to set off -- social security disability payments." *Flowers*, 165 F.3d at 558. In *Flowers*, the Seventh Circuit reversed the district court's decision as to back pay and remanded it for recalculation, including whether plaintiff's social security payments should be offset, but did not hold that social security payments *must* be offset. In *Schuster*, the district court decided *not* to deduct social security payments from back pay because (1) the plaintiff partially funded those payments by virtue of his social security taxes, and (2) "allowing the defendant to deduct social security benefit payments received by plaintiff from any

5

back pay award would confer on defendant a 'discrimination bonus.'" 2002 WL 508130, at *7 (quoting *O'Grady*, 857 F.2d at 391) (explaining further that if offset, defendant would only be required to pay the salary defendant would have paid but for the termination "*minus* (rather than *plus*) social security contributions")).

Regardless of whether the collateral source rule should apply or not, back pay is an equitable remedy and, therefore, the issue of whether Walters' social security income should be deducted from an award of back pay need not be asked of the jury. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 460 (7th Cir. 2006) (explaining that ADA allows for equitable relief in the form of an injunction, reinstatement, or back pay, citing 42 U.S.C. § 2000e–5(g)(1)).[2] Accordingly, not only would such proof be irrelevant for the jury's findings, it would likely confuse them. The court will, therefore, grant plaintiff's motion to exclude evidence of her receipt of social security and will reserve on the issue of whether the collateral source rule should apply pending a finding of liability and damages by the jury.[3]

### D. Motion in Limine #4: Exclude evidence or argument regarding allegations of illegal drug use by Walters

Next, plaintiff seeks an order excluding any evidence that Walters used illegal nonprescription drugs under Rules 401 and 403. Walters anticipates that Parsons will

---

[2] An award of back-pay under the FMLA, may be a "legal" remedy subject to a jury trial. *See Franzen v. Ellis Corp.*, 543 F.3d 420, 425 (7th Cir. 2008). Given that plaintiff's FMLA claim does not concern her subsequent termination, the court assumes any back pay claim would be premised on a finding of liability under the ADA.

[3] To the extent defendant seeks an offset, it may present proof of the amount of offset to the court sitting in equity while the jury deliberates on damages.

testify that she used drugs, an allegation which Walters vehemently denies, and which she contends Parsons is making "out of vengeance because Walters was not interest in developing a marital relationship with him." (Pl.'s Br. (dkt. #116) 8-9.) Plaintiff contends that this evidence is not relevant to her ADA or FMLA claims and that, even if probative, is unduly prejudicial. As for the damages phase of trial, plaintiff anticipates defendant's argument that any drug use goes to her claim of emotional damages, but contends that other courts have excluded this evidence absent specific proof that the drug use actually created emotional distress. (*Id.* at 9-10.)

In response, defendant contends that "plaintiff has made her physical and mental condition during this time period the focal point of her claimed disability and claim for damages," specifically noting her claim of significant weight loss and sleep issues, symptoms that defendant wants to argue could be explained by her use of illicit drugs. (Def.'s Opp'n (dkt. #142) 7.)

The court will deny this motion. While evidence of Walters' illicit drug use will be prejudicial, the probative value of this evidence -- as an alternative explanation for her symptoms -- outweighs the prejudicial effect. Walters is, of course, free to challenge Parsons' testimony of this use.[4]

---

[4] This is one instance where plaintiff may wish to introduce evidence of Walters' and Parsons' subsequent marriage and divorce to demonstrate bias on his part. As previously noted, however, once the door is open, then defendant may elicit testimony on these subjects as well.

### E. Motion in Limine #5: Exclude testimony of defendant's expert, Nina Bartell, Ph.D., relating to "comments" in her report

Plaintiff seeks an order barring defendant's expert, Dr. Nina Bartell, from testifying about certain opinions identified as (a), (b) and (d) at the end of her report. (Expert Report of Nina P. Bartell, Ph.D. ("Bartell Report") (dkt. #129) 13-14.)

Specifically, Bartell opined:

> a) It is not clear to me as to what exact information Mayo had in order to ascertain how Amy Walters may have been limited in her ability to function in the work setting. It is evident that she took great pains to keep her condition a secret and to prevent or limit the information that might have provided some clarity to her conduct and very complicated mental health condition.

Plaintiff challenges this opinion on the basis that it involves no scientific, technical or specialized knowledge, but rather simply reflects Bartell's interpretation of the evidence. (Pl.'s Br. (dkt. #116) 11-12.) Bartell interviewed Walters for eight hours over two days in rendering a report, and likely based this conclusion on Walters' own statement that "she was able to 'hide my life and anything that happened to me when I was a kid.'" (Bartell Report (dkt. #129) 5.) The court agrees that the connection between Bartell's specialized knowledge and this opinion is attenuated at best. Of equal concern is the extent to which this opinion testimony may undermine or even usurp the jury's role in weighing and sifting the facts. Accordingly, the court will bar Bartell from opining that Walters attempted to hide her mental health issues. Of course, this does not preclude Bartell from testifying as to *what* Walters said.

Next, plaintiff challenges Bartell's opinion about appropriate accommodations:

> b) If I am to assume that the only medical information that Mayo had about Ms. Walters was set forth in the October, 2010 FMLA certification, appropriate accommodations would be the ones recommended by her treatment provider, namely that she continue with her treatment described as a combination of medication and psychotherapy, and be granted time for recovery in case of recurring panic attacks. It is apparent that Mayo staff was supportive and encouraging of Amy's use of the FMLA according to the parameters set forth.

Plaintiff contends that the court should bar this opinion because Bartell is not an expert on what constitutes a reasonable accommodation under the ADA. (Pl.'s Br. (dkt. #116) 11.) In response, defendant contends that Bartell has experience "completing ADA disability forms and constructing FMLA treatment plans," and as such, has "expertise to render opinions on what course of action and accommodations were appropriate in light of the information available to Mayo." (Def.'s Opp'n (dkt. #142) 12.) While the court agrees that Bartell's experience completing forms could form the basis for an opinion as to the substance of Walters' October 2010 FMLA certification, Bartell lacks specialized knowledge as to how an employer would use the information in the form to determine a reasonable accommodation. Moreover, this proposed opinion comes dangerously close to allowing Bartell to opine on the ultimate legal question in this case. Accordingly, the court will grant plaintiff's motion in limine to the extent Bartell seeks to opine as to what an appropriate accommodation would be. In all other respects, the motion as to (b) is denied.

Lastly, plaintiff challenges Bartell's opinions in (d):

9

> d) Whether Ms. Walters was "chilled" regarding the future use of FMLA is inconsistent with the information obtained. While it appears to be the case that Amy worked hard to hide her mental health difficulties from others as well as from herself, she was acquainted with FMLA from her own history of using it for medical issues relative to herself and in relation to family members. Furthermore, according to the treatment notes of Dr. Collier, Amy Walters approached him with establishing an open ended FMLA several weeks after the October 5, 2010 incident for the purposes of addressing that event as well as any other similar events that could follow. Dr. Collier complied with her request and seemed willing and able to continue her treatment and endorse her FMLA as needed. Amy Walters did not seek the recommended treatment and then claimed that treatment would not be made available to her for months because of Dr. Collier's busy schedule. It is noteworthy that Ms. Walters appears to have a history of doing what she needs to do to survive, or at least significantly benefit her circumstances. She admitted that she married a man who worked with her and with whom she had a tenuous friendship for the sole purpose of obtaining medical insurance. Compared to this, employing the use of an FMLA that seemed relatively easy to obtain and extend for her purposes would seem easier and substantially less personally risky.

Plaintiff seeks to exclude Bartell's opinion that "It is noteworthy that Ms. Walters appears to have a history of doing what she needs to do to survive, or at least significantly benefit her circumstances," based on the fact that Walters "admitted that she had married a man who worked with her and with whom she had a tenuous friendship for the sole purpose of obtaining medical insurance." (Pl.'s Br. (dkt. #116) 12.) Plaintiff argues that this opinion should be excluded under Rule 403 and because it is not based on any specialized knowledge or any scientific principles or method. In light of the court's decision to bar testimony of Walters' subsequent marriage to Parsons, the court will grant this motion as well, baring Bartell from testifying that Walters' marriage to Parsons supports her conclusion that Walters has a history of doing what she needs to survive. Moreover, plaintiff does not appear to be pursuing any claim that her FMLA

10

rights were chilled, and therefore Bartell's opinion on this subject is not relevant to the remaining claims. Finally, Bartell will not be allowed to opine as to anyone's personal motivations or intent without first making a proffer outside the presence of the jury.

### F. Motion in Limine #6: Exclude evidence or argument relating to conduct by plaintiff's former psychiatrist Jay Collier

Finally, plaintiff seeks a motion excluding evidence of Dr. Collier's alleged misconduct on Rule 401 and 403 grounds. Defendant does not oppose this motion. Accordingly, the court will grant plaintiff's motion in limine #6 as unopposed.

## II. Defendant's Motions in Limine (dkt. #121)

### A. Motion in Limine #1: Exclude evidence or argument relating to the opinions or expert report of Dr. Jay Collier

Defendant seeks to exclude evidence, argument or questions relating to the expert report of Dr. Collier. Defendant represents that Dr. Collier will no longer be serving as an expert. (Plaintiff previously withdrew his affidavit submitted in support of her opposition to defendant's motion for summary judgment because of accusations of improper conduct.) Defendant nevertheless anticipates that plaintiff will attempt to usher Dr. Collier's opinions in through the testimony of plaintiff's current mental health expert, who, unlike Collier, is not a medical doctor specializing in psychiatry, but rather a master's level counsel specializing in marriage and family counseling. (*Id.* at 4.) In support of its motion, defendant directs the court to cases where courts have excluded

11

testimony which simply parrots the opinions of other experts, without independently conducting the analysis leading to the opinions. (Def.'s Br. (dkt. #121) 2-3.)

In response, plaintiff contends that Dr. Collier *will* be called on to "provide expert testimony as Walters' treating psychiatrist," with his testimony limited to those opinions contained in his Rule 26 disclosure. (Pl.'s Opp'n (dkt. #135) 1-2.) Based on plaintiff's motion to supplement her expert disclosures, and in light of plaintiff's accusations against Collier and his subsequent refusal (at least initially) to be deposed, the court was left with the same impression as defendant -- that Dr. Collier would not be serving as an expert witness. On the other hand, plaintiff never withdrew him as a named expert and, in light of plaintiff's intent to call Dr. Collier as an expert witness, defendant's motion is moot, but the court will reserve on this motion pending a reply by defendant at the final pretrial conference.

### B. Motion in Limine #2: Exclude evidence or argument relating to a hostile work environment claim

Next, defendant seeks to exclude evidence or argument relating to plaintiff's dismissed hostile work environment claim, listing 13 categories of evidence plaintiff may seek to introduce in support of the now-dropped harassment claim. (Def.'s Br. (dkt. #121) 4-5.) Specifically, defendant seeks to exclude evidence that "Defendant scrutinized Plaintiff's attendance;" "criticized Plaintiff for asking for assistance;" and "asked Plaintiff to report to employee health for an evaluation," among other categories. (*Id.* at 5.)

12

In response, plaintiff argues that this evidence -- while arguably relevant to a harassment claim -- is *also* relevant to her ADA claims, namely defendant's discriminatory intent, knowledge of her disability and limitations, and failure to accommodate. (Pl.'s Br. (dkt. #135) 3.) The court agrees. The court will not exclude testimony relevant to her present claims simply because this evidence may also have been relevant to the dismissed hostile work environment claim. To the extent that some categories of evidence is more attenuated to her ADA claims, the court will entertain relevance objections during the course of trial, but will not exclude broad categories of evidence at this time. Accordingly, the court will deny defendant's motion in limine #2.

### C. Motion in Limine #3: Exclude evidence and testimony on plaintiff's inability to be reinstated due to PTSD

Defendant also seeks an order excluding any testimony or evidence of plaintiff's inability to be reinstated because of her PTSD, based on plaintiff's expert Margo Hecker's recent opinion. (Def.'s Br. (dkt. #121) 6.) Defendant contends that this opinion is contrary to plaintiff's pleading, in which she sought reinstatement as part of her prayer for relief, and that plaintiff's attempt to amend her pleading through the expert report violates Rule 15(a)(2), requiring leave of court to do so. (*Id.* at 7.) In the alternative, defendant argues that Hecker's opinion should be excluded because it unfairly prejudices defendant. (*Id.* at 8.)

In response, plaintiff directs the court to her complaint in which she sought "reinstatement *or* front pay until such time as Walters is able to resume gainful employment at a similar salary." (Compl. (dkt. #1) 11 (emphasis added).) As such,

13

Walters contends that she is not attempting to amend her complaint so much as electing a remedy precluding defendant's from claiming surprise based on Hecker's statement that "it would not be feasible or in [Walters'] best interests to reinstate her to her former place of employment." (Pl.'s Opp'n (dkt. #135) 5.)

The court agrees with plaintiff as far as she goes, but like back pay, reinstatement is an equitable remedy. Therefore, any opinion as to whether plaintiff is unable to be reinstated is not an issue for the jury. Accordingly, the court will grant defendant's motion to exclude Hecker's testimony before the jury on this subject, while allowing it as part of the presentation of evidence to the court during jury deliberations on damages.

### D. Motion in Limine #4: Preclude plaintiff from referencing or introducing evidence of the ERD probable cause finding

Defendant seeks an order excluding the ERD probable cause finding from trial. Plaintiff indicates that she has no intention to introduce or reference the fact that there was such a finding. Accordingly, the court will grant defendant's motion in limine #4 as unopposed.

### E. Motion in Limine #5: Preclude plaintiff from referencing, arguing or introducing evidence relating to Walters' difficulties in taking or picking up her daughter from daycare

Defendant seeks an order excluding argument or evidence that plaintiff was at times required to report to work by 5:30 a.m., contrary to a supervisor telling her that she would not be required to report before 5:45 a.m. Because of this, Walters apparently also maintains that she "had to ask her teenage daughter to take her young child to

14

daycare before school, which created difficulties and stress." (Def.'s Br. (dkt. #121) 12 (quoting Compl. (dkt. #1) ¶ 12).) Defendant contends that this evidence is not relevant the issue for trial under Rule 401, and would create needless confusion under Rule 403.

In response, plaintiff argues that this evidence is relevant to Heutmaker's credibility since she assured Walters that she would not have to report before 5:45 a.m. (Pl.'s Opp'n (dkt. #135) 7.) Plaintiff also argues that "[t]his evidence is relevant to Defendant's claim that it was unaware of limitations Walters had which affected her ability to work" and to her "claim of failure to accommodate." (*Id.*)

Certainly, a 5:30 a.m. report time would pose difficulties for anyone, and although it seems a stretch to claim that a 15 minute time difference had such profound consequences, it is not inconceivable. The real problem for plaintiff is that these difficulties are entirely unrelated to her disability and her claims premised on that disability. Accordingly, the court will exclude this testimony under Rule 401 during the liability phase of trial and reserve as to its admissibility during the damages phase.

### F. Motion in Limine #6: Preclude plaintiff from referencing or introducing evidence regarding allegations of wrongful wage and hour conduct

Defendant also seeks an order precluding plaintiff from referencing or introducing evidence of wrongful wage and hour conduct. In particular, defendant cites to anticipated testimony that Heutmaker, Walters' supervisor, instructed her to "work off the clock." (Def.'s Br. (dkt. #121) 14.) In addition to being irrelevant to plaintiff's FMLA and ADA claims, defendant argues that this evidence would result in jury confusion.

Plaintiff opposes the motion, claiming that (1) Heutmaker has denied telling Walters to work off the clock, and therefore this evidence is relevant to Heutmaker's credibility and (2) the request that plaintiff work off the clock also goes to "Defendant's treatment of Walters' once it became aware of her disability." (Pl.'s Opp'n (dkt. #135) 8-9.)

Unless defendant opens the door to impeachment, this evidence is not relevant to Heutmaker's credibility. Fed. R. Evid. 608. Nevertheless, this evidence *may* be relevant to the extent defendant attempts to justify its disciplinary actions and ultimate termination of her employment based on her attendance issues. Accordingly, the court will allow this evidence to be introduced solely for that purpose. To ameliorate any confusion on the part of the jury should this evidence come in, the court would consider a jury instruction informing the jury that plaintiff is not pursuing any wage or hour claims against defendant and that the jury should not consider whether defendant violated any wage and hour laws in deciding the merits of plaintiff's ADA and FMLA claims. On that basis, the court will deny defendant's motion in limine #6.

ORDER

IT IS ORDERED that:

1) plaintiff's motions in limine (dkt. #115) are GRANTED IN PART, DENIED IN PART AND RESERVED IN PART as follows:

   a) plaintiff's motion in limine #1 to exclude evidence of Walters' marriage to Parsons at the liability stage is granted in part and denied in part with respect to the liability phase of trial and reserved as to the damages phase;

    b) plaintiff's motion in limine #2 to exclude evidence of Walters' relationship with Perez is granted in part and denied in part with respect to the liability phase of trial and reserved as to damages;

    c) plaintiff's motion in limine #3 to exclude evidence of plaintiff's receipt of social security benefits is granted, but the court reserved on whether plaintiff's receipt of social security benefits should be offset from any back pay award;

    d) plaintiff's motion in limine #4 to exclude evidence of plaintiff's illicit drug use is denied;

    e) plaintiff's motion in limine #5 to exclude comments contained in Dr. Bartell's expert report is granted in part and denied in part; and

    f) plaintiff's motion in limine #6 to exclude evidence regarding improper conduct on the part of plaintiff's former psychiatrist is granted as unopposed;

2) defendant's motions in limine (dkt. #121) are GRANTED IN PART, DENIED IN PART AND RESERVED IN PART as follows:

    a) defendant's motion in limine #1 to exclude the opinions of Dr. Jay Collier is reserved pending argument during the final pretrial conference;

    b) defendant's motion in limine #2 to exclude evidence relevant to plaintiff's hostile work environment claim is denied without prejudice to specific relevance challenges during trial;

    c) defendant's motion in limine #3 to exclude evidence of plaintiff's inability to be reinstated is granted, but the court reserved on the issue of whether reinstatement is an appropriate remedy;

    d) defendant's motion in limine #4 to exclude the ERD's probable cause finding is granted as unopposed;

    e) defendant's motion in limine #5 to exclude evidence of plaintiff's daycare issues caused by her work report time is granted; and

    f) defendant's motion in limine #6 to exclude evidence of wrongful wage and hour conduct by defendant is denied.

Entered this 12th day of March, 2014.

                      BY THE COURT:

                      /s/

                      _____
                      WILLIAM M. CONLEY
                      District Judge