# CLOSING INSTRUCTIONS

## A. Introduction

Ladies and Gentlemen of the Jury:

You are about to hear closing arguments of the parties. Before these arguments, I will instruct you on the law. After closing arguments, I will provide very brief instructions governing your deliberations. After that, the case will be in your hands.

### 1. Questions for Deliberations

It is my job to decide what rules of law apply to this case and to explain those rules to you. It is your job to follow the rules, even if you disagree with them or don't understand the reasons for them. You must follow all of the rules; you may not follow some and ignore others.

The case will be submitted to you in the form of a special verdict consisting of 4 questions. [Read special verdict form.] In answering the questions, you should consider only the evidence that has been received at this trial. Do not concern yourselves with whether your answers will be favorable to one side or another, or with what the final result of this lawsuit may be.

Note that certain questions in the verdict are to be answered only if you answer a preceding question in a certain manner. Read the introductory portion of each question very carefully before you undertake to answer it. Do not answer questions needlessly.

2. **Burden of Proof**

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true.  On the liability questions in the special verdict, the burden of proof is on the party contending that the answer to a question should be "yes."  You should base your decision on all of the evidence, regardless of which party presented it.

3. **Answers Not Based on Guesswork**

If, after you have discussed the testimony and all other evidence that bears upon a particular question, you find that the evidence is so uncertain or inadequate that you have to guess what the answer should be, then the party having the burden of proof as to that question has not met the required burden of proof.  Your answers are not to be based on guesswork or speculation.  They are to be based upon credible evidence from which you can find the existence of the facts that the party must prove in order to satisfy the burden of proof on the question under consideration.

B. **Special Verdict**

1. **Americans with Disabilities Act Claims**

    a. **Overview**

Plaintiff Amy Walters has brought this lawsuit under a federal law called the Americans with Disabilities Act, which is often referred to by its initials "ADA."  Under the ADA, it is illegal for an employer to discriminate against a person with a disability if

that person is qualified to do the essential functions of her job and the employer is aware of her limitations.

In this case, plaintiff claims that defendant Mayo-Eau Claire discriminated against her (1) by failing to provide plaintiff with a reasonable accommodation for her disability; and (2) by disciplining and terminating her because of her disability (this is known as "disparate treatment"). Defendant denies that it discriminated against plaintiff in either respect.

As you listen to these instructions, please keep in mind that many of the terms I will use have a special meaning under the law. So, please remember to consider these specific definitions, rather than using your own opinion or even common sense as to what these terms mean.

### b. Reasonable Accommodation Claim

In this case, plaintiff claims that defendant unlawfully failed to provide a "reasonable accommodation." To succeed, plaintiff must prove five things by a preponderance of the evidence:

(1) plaintiff had a "disability" of which defendant was aware at the time of the alleged failure to accommodate;

(2) plaintiff was "qualified" to perform the job;

(3) plaintiff requested an accommodation;

(4) defendant was aware of plaintiff's disability at the time of plaintiff's request; and

(5) defendant failed to provide plaintiff with a "reasonable accommodation."

If you find that plaintiff has proved each of the elements listed above by a preponderance of the evidence, you should answer Question No. 1 "Yes."  If you find that plaintiff has failed to prove any of these things by a preponderance of the evidence, you should answer Question No. 1 "No."

### c. Disparate Treatment Claim

To succeed on her claim of disparate treatment, plaintiff must prove four things by a preponderance of the evidence:

(1) plaintiff had a "disability" of which defendant was aware at the time of the challenged job actions;

(2) plaintiff was "qualified" to perform the job;

(3) defendant demoted, suspended and/or terminated plaintiff; and

(4) defendant would not have taken one or more of these actions if plaintiff had not had a disability, but everything else had been the same.

If you find that plaintiff has proved each of these things by a preponderance of the evidence, you should answer the relevant subpart of Question No. 2 "Yes."  If you find that plaintiff has failed to prove any of these things by a preponderance of the evidence, you should answer the relevant subpart of Question No. 2 "No."

### d. Definitions

#### i. Disability

Under the ADA, the term "disability" means a physical and/or mental "impairment" that "substantially limits" one or more "major life activities."

A mental "impairment" means any condition that prevents the mind from functioning normally, including any mental, psychological or emotional disorder or illness.

An impairment is a disability if it "substantially limits" the ability of an individual to perform a "major life activity" as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nevertheless, not every impairment will constitute a disability within the meaning of the law. An impairment need not be permanent or long-term; a person with an impairment that substantially limits a major life activity is disabled, even if the impairment lasts only six months or less. Even an impairment that is episodic or in remission is still a disability if it would substantially limit a major life activity when active.

"Major life activities" are activities that are of central importance to everyday life, and include caring for oneself, performing manual tasks (such as household chores), seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. An impairment that substantially limits one life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment.

In determining whether an impairment substantially limits a major life activity, you should not consider the ameliorative effects of mitigating measures such as medications. In other words, if a person is taking measures, such as medications, to correct for or mitigate a mental impairment, the effects of those measures may not be

5

taken into account when determining whether that person is "substantially limited" in a major life activity and thus "disabled" under the ADA.

An impairment "substantially limits" a person's ability to work if it significantly restricts her from performing a class of jobs, or a broad range of jobs in various classes, compared to someone with similar knowledge, skills and training.  Being unable to do a particular job is not by itself a substantial limitation on the ability to work.

### ii. Qualified

Under the ADA, plaintiff was "qualified" if she had the skill, experience, education, and other requirements for the job and could do the job's "essential" functions, either with or without accommodation, during the relevant period -- roughly October 2010 to April 2011.

Not all job functions are "essential."  Essential functions are a job's fundamental duties.  In deciding whether a function is essential, you may consider the reasons the job exists, the number of employees defendant has to do that kind of work, the degree of specialization the job requires, defendant's judgment about what is required, the consequences of not requiring an employee to satisfy that function, and the work experience of others who held the position.

In addition to specific job requirements, an employer may have general requirements for all employees.  For example, the employer may (1) expect employees to refrain from abusive or threatening conduct toward others, or (2) require a regular level of attendance.

      iii.    <u>Reasonable Accommodation</u>

Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits that it will produce.

A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules, but does not include elimination or change of essential job functions, assignment of essential job functions to other employees, or lower productivity standards.

      iv.    <u>Request for Reasonable Accommodation</u>

If a plaintiff's disability and the need to accommodate it are obvious, the law does not necessarily require an employee to ask for a reasonable accommodation expressly. It may be that some symptoms are such obvious manifestations of an underlying disability that it would be reasonable to infer that an employer actually knew of the disability. In those situations, deliberate ignorance should not insulate an employer from liability for its failure to make reasonable accommodations. Where an employee suffers from mental health problems, the employer may have some responsibility to take the small step of inquiring about possible accommodations because the employee may have difficulty communicating her needs.

Once an employer is aware of the possible need for an accommodation, it must discuss that possibility with the employee as part of an interactive process. Both the employer and the employee must cooperate in this interactive process in good faith.

Neither party can win this case simply because the other does not cooperate in such a process, but you may consider whether a party cooperated in this process when deciding whether a reasonable accommodation existed.

### 2. Family Medical Leave Act Claim

Plaintiff has also brought a claim under the Family Medical Leave Act, which is often referred to by its initials "FMLA." This law entitles an eligible employee to take up to twelve weeks of unpaid leave during any twelve month period for several reasons, including a serious health condition that makes her unable to perform the functions of her position.

Plaintiff claims that she was entitled to take time off from work under the FMLA and that defendant interfered with these rights. An employer interferes with an employee's rights under the FMLA if the employer uses FMLA-protected leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.

#### a. October 7, 2010, Warning

While there is no dispute that plaintiff was granted FMLA leave for October 5th and 6th, plaintiff claims that defendant interfered with her rights under the FMLA by issuing her a written warning on October 7, 2010, for her actions on the morning of October 5th. Defendant contends that its decision to discipline was unrelated to her right to leave, but rather for her failure (1) to clock in that day and (2) to provide notice to a supervisor before or shortly after leaving work on the 5th consistent with defendant's

8

policies and procedures. To determine whether defendant interfered with her FMLA rights, you must determine whether defendant disciplined plaintiff in violation of those rights. In doing so, you may consider what notice and procedures are required by the FMLA. Under the FMLA, when the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. Absent unusual circumstances, it generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, an employer may consider a failure to provide notice as a negative factor in employment actions.

Question No. 3 on the special verdict form, asks whether the defendant interfered with her rights under the FMLA by issuing her a written warning on October 7, 2010. If you find that plaintiff has proven this by a preponderance of the evidence, then you should answer Question No. 3 "Yes." If you find that plaintiff has failed to prove this claim, you should answer Question No. 3 "No."

### b. Subsequent Job Actions

If you answer Question No. 3 "Yes," you will also be asked to consider whether defendant relied on the written warning in taking the subsequent job actions of demoting Walters and terminating her employment. Specifically, plaintiff claims that defendant

interfered with her rights under the FMLA by relying on the October 7, 2010, written warning in taking these subsequent job actions.

On the special verdict form, Question No. 4 asks you to consider whether Mayo-Eau Claire interfered with Walters' rights under the FMLA with respect to these discrete actions. If you find that plaintiff proved by a preponderance of the evidence that defendant interfered with her right by relying on the October 7, 2010, written warning in demoting and/or terminating her employment, you should answer the relevant subpart of Question No. 4 "Yes." Otherwise, you should answer the relevant subpart of Question No. 4 "No."